# Richmond

## LESLIE GOIN V. COMMONWEALTH.

January 24, 1944.

Record No. 2784.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*John B. Boatwright,* for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *Edwin B. Jones, Assistant Attorney General,* for the Commonwealth.

BROWNING, J., delivered the opinion of the court.

The plaintiff in error, who was the defendant in the trial court, was found guilty of grand larceny and given two years in the penitentiary. This was the verdict of the jury, which was confirmed by the court.

The facts in brief, and stated in the light most favorable to the Commonwealth, as is its right, are these: In the evening of February 27, 1943, the defendant, with several young men, went to a store not far from Buckingham Court House and there found Harold Mitchell and his older brother with several young women. The defendant and his friends stayed for some two hours. These young persons were merrymaking, which consisted of music furnished by a nickelodian, dancing and drinking soft drinks. It was in evidence that the defendant had been drinking hard liquor though it does not appear that he was drunk. During the evening the defendant asked Harold Mitchell for the time. Mitchell had on a metal case wrist watch and the defendant asked him to let him see it. He took it off and handed it to him. The owner of the watch testified that the defendant remained in the store about an hour after he

had taken the watch and that he did not ask him for it; that he was afraid to do so because he was drinking. Mitchell's brother testified that when the watch was handed to the defendant he looked at it and said "This is my watch," and he put it in his pocket and nothing more was said about it until some time afterward, Butch Shoemaker, who was with the defendant, said to Ben Mitchell, "What are you going to do about the watch? I have got a sharp knife and it cuts."

It was also testified that there was no disorder, no loud talking or cursing and no trouble of any sort. The defendant lived at Dillwyn, some ten miles from the home of Mitchell, who owned the watch. The defendant went home after leaving the store and nothing more transpired with reference to the watch until a Miss Martin, visiting at the house where the defendant lived, saw it and asked him to lend it or give it to her. He told her that it belonged to Harold Mitchell but that she could use it until he should call for it.

About two weeks afterward Mitchell went to Dillwyn and consulted the Commonwealth's attorney, who advised him to swear out a warrant against the defendant, charging him with the larceny of the watch. The defendant was arrested and the officer making the arrest testified that he denied knowing anything about the watch and called upon high Heaven to witness his declaration. The watch was afterward found under the house, where the defendant and some eight or ten other persons lived, in a small jar and the sheriff learned from the Shoemaker boy that a man named Martin had put it there. Mitchell testified that before the arrest was made he went to Dillwyn to find the defendant but was told that he was working at Keysville. Mitchell testified that he never saw the defendant from the evening at the store on 27th of February, until he was arrested about the middle of March, nor had he written to him or communicated with him in any way.

The only testimony as to the value of the watch was that of the owner who said that when he purchased

it he gave $5.oo for it. Of course to justify the conviction of grand larceny it was necessary to prove that the article stolen was worth $5.oo or more. This proof is absolutely lacking, therefore the accused could not have been legally convicted of the crime charged. It is true that the watch was exhibited to the jury but that alone, we think, is not sufficient. The jury was doubtless influenced by the statement of the Commonwealth's attorney in his address that the watch was worth $10.oo. This, of course, was not evidence and it was improper.

But aside from the failure to prove the value of the watch, and the improper argument, to which we have alluded, we do not think that the evidence justifies the finding of guilt of any crime. It seems rather a natural occurrence to inquire as to the time and to be impressed with the appearance of the timepiece and in a daring way put it in one's pocket and forget about it, as the defendant testified was the case, and take it to one's home and the statement to Miss Martin, which is not denied, that it belonged not to him but to Mitchell and that she could have it until the owner called for it, all of this makes sense. The remark attributed to Shoemaker about his knife and it's cutting quality does not do so. The defendant's denial of knowing the whereabouts of the watch when arrested by the officer is of some moment in our consideration of the matter but this may be reasonably accounted for or explained by the alarm and probable fright occasioned him by the arrest, and he probably did not know at the time where the watch was. At any rate the setting, the occasion and the whole thing does not impress us with the incident of seriousness. There was no duress, no threat, no hostility, no secrecy, nothing importing stealth and it seems to us a miscarriage of justice for the man to be found guilty of any crime.

The taking of the watch in the manner described and its retention seems to us to have been with the acquiescence of the owner and the presence of crime in the circumstances appears unreal.

We reverse the judgment of the trial court and find judgment for the defendant and direct that he be discharged from custody.

*Reversed and final judgment.*

Hudgins, J., dissenting.

I think the evidence for the Commonwealth, tending to prove that the accused was guilty of obtaining property from the owner by trickery with intent to steal, was sufficient to raise an issue to be determined by a jury. The accused wrongfully took the watch without the consent of the owner. He did not return it or communicate with the owner about it. He gave it to his girl and, when arrested, vehemently denied that he knew anything about the watch. Later, it was found in a jar hidden under the house occupied by the accused.

The Commonwealth failed to prove that the value of the watch alleged to have been stolen was $5 or more. This necessarily means that the accused could not be found guilty of a felony. I think the case should be reversed and remanded, with instructions to give the accused a new trial on the charge of simple larceny.