# Richmond

## Walter Bateman v. Commonwealth of Virginia.

November 20, 1944.

Record No. 2848.

Present, All the Justices.

The opinion states the case.

*James N. Garrett,* for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *V. P. Randolph, Jr., Assistant Attorney General,* for the Commonwealth.

CAMPBELL, C. J., delivered the opinion of the court.

This writ of error brings under review a verdict of the jury and the judgment of the trial court wherein, upon an indictment for the murder of Willie Riddick, the accused was found guilty of voluntary manslaughter and sentenced to the penitentiary for a term of one year.

On the night of August 10, 1942, the accused, Walter Bateman, was an employee of one Jim Shine, in the operation of an establishment located on the Suffolk highway, known as the "Log Cabin." On the night in question, the deceased, Willie Riddick, in company with Joseph Warren, entered the "Log Cabin" and within a short time after his entrance, an argument ensued between the accused and Riddick. The evidence is in conflict as to the nature of the argument, but it is conceded that it reached the point where

the accused requested the police to remove Riddick from the premises. Upon being requested by the police to leave the premises, Riddick, who had been drinking, refused to go. However, upon the threat of the police to take him to jail if he did not leave the premises, he departed. In a few minutes, after the police left the "Log Cabin," he returned and entered a back room occupied by the accused and several other persons.

It is the contention of the Commonwealth that the accused, armed with a pistol, without provocation, shot and killed Riddick immediately upon his arrival. The contention of the accused is that when Riddick entered the room he advanced upon the accused with a knife in his hand, called him vile names, threatened to kill him, and did make an effort to cut him with the knife; and that thereupon accused shot and killed Riddick, in order to preserve his own life.

It is assigned as error that the trial court refused to grant a mistrial because of the alleged improper argument of the attorney for the Commonwealth.

In his argument to the jury, the attorney for the Commonwealth indulged in this language: "He (the defendant) admitted he did not look for work, and on cross-examination you would find that he did not have anything to do but go out and operate a place that he says was a club; that he didn't have a license and didn't know the people except a man named Shine, *who is now in the room.* I ask if any club members are here. You can see what it was. It was brought out in evidence that *it was a colored nip joint, and that is what it was.*" Counsel for the accused objected to the language employed and moved the court to grant a mistrial. Without any admonition to counsel, the court overruled the motion.

Proceeding with his argument to the jury, the attorney for the Commonwealth employed this language: "It is a perfectly clear case of unwarranted killing on the part of that man that night. The boy, because of his age, would, like some of those who testified today, have been glad to go to fight or do anything where they take them, to defend the

liberties of this country, but he is not killed by a German bullet nor by a bullet from a Jap's gun, but he is killed by somebody here at home, unjustified and unwarranted." Again there was a motion for a mistrial, which was over-ruled.

This assignment of error is well founded.

Without the vestige of any evidence adduced in the trial, the attorney for the Commonwealth stated that Shine, the employer of the accused, was in the court room. This statement was a direct impeachment of the accused, who testified that he was employed by Shine and that Shine was in the army. From the "testimony" of the attorney for the Commonwealth—not under oath—the jury no doubt concluded that since the accused lied in regard to the whereabouts of Shine, he was unworthy of belief when he stated he shot in self-defense.

Furthermore, there is not a scintilla of evidence that Riddick would have been glad to go and fight against the Germans or the Japs. But one inference can be drawn from the argument advanced, and that is that it was an effort on the part of counsel to appeal to the patriotic impulse of the jury, and to impress upon them that a potential patriot had been foully murdered.

This court has upon numerous occasions been called upon to comment upon the unwarranted conduct of the representatives of the Commonwealth in criminal cases.

In *Mohler* v. *Commonwealth*, 132 Va. 713, 731, 111 S. E. 454, Judge Prentis said: "The attorney for the Commonwealth represents the people of the State, who, in their collective capacity, are just as anxious that innocent men shall be acquitted as they are that guilty men shall be convicted. The prosecuting attorney is selected for the purpose of representing this sentiment. The presumption of innocence attends an accused person at every stage of the trial until his conviction, and the prosecuting attorney should respect this presumption." See *Harris* v. *Commonwealth*, 133 Va. 700, 112 S. E. 753.

In *Jessie* v. *Commonwealth*, 112 Va. 887, 71 S. E. 612, it was held that the statement by the prosecuting attorney, in his address to the jury, that a witness who had testified before the coroner's jury had been persuaded, by the accused, to leave the State, when there was not a scintilla of evidence to support the statement, was reversible error.

In *Mullins* v. *Commonwealth*, 113 Va. 787, 75 S. E. 193, it was held that arguments made and opinions expressed by the attorney for the Commonwealth, when there was no evidence in the case upon which to base either, was prejudicial error.

A case analogous to the case at bar is *McCoy* v. *Commonwealth*, 125 Va. 771, 99 S. E. 644. There it was held that the action of the trial court in permitting counsel representing the Commonwealth, in his closing argument to the jury, to give his opinion and theory as to how a certain blackjack got into the case, which opinion and theory was unsupported by any evidence, was reversible error.

The next assignment of error relates to the action of the court in giving and refusing certain instructions.

In view of the fact that the accused, upon a new trial, cannot be prosecuted for a higher offense than voluntary manslaughter, it is unnecessary to discuss the instructions dealing with the charge of murder. That no charge of murder is now in issue is made manifest by section 4918 of Michie's Code. That section provides *inter alia*: "If the verdict be set aside and a new trial granted the accused, he shall not be tried for any higher offense than that of which he was convicted on the last trial."

The last assignment of error is that the verdict of the jury is contrary to the evidence.

As the case has to be reversed for the error hereinbefore pointed out, we deem it improper to indulge in any discussion of the merits of the case.

*Reversed and remanded.*