COURT OF APPEALS OF VIRGINIA


Present:   Judges Bumgardner, Humphreys and Senior Judge Hodges
Argued at Richmond, Virginia


KATHY H. CATLETT

v.      Record No. 3031-03-2

LARRY D. CATLETT                              MEMORANDUM OPINION[*] BY
                                             JUDGE RUDOLPH BUMGARDNER, III
LARRY D. CATLETT                                  AUGUST 24, 2004

v.      Record No. 3057-03-2

KATHY H. CATLETT


                FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                       Margaret A. Englisby, Judge *pro tempore*

            Bradley D. Wein for Kathy H. Catlett.

            Elizabeth C. Mooz (Larry D. Catlett; Larry D. Catlett & Associates,
            on briefs), for Larry D. Catlett.


        Kathy H. Catlett and Larry D. Catlett appeal a final decree of divorce entered after four

years of protracted and contentious litigation.  The trial court granted a divorce on the grounds of

a one-year separation, distributed one half of the marital estate to each party, but did not award

spousal support or reserve it for the future.  The wife presents ten questions in her appeal, and the

husband raises four in his.  The issues raised in his separate appeal are the same as those raised

by his cross-appeal.

        The parties married in January 1995.  It was the second marriage for both.  They had no

children during this marriage, but their children by prior marriages lived with them.  The

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

husband moved out of the marital bedroom in the summer of 1999, and filed for divorce November 4, 1999 alleging cruelty and desertion. The wife filed a cross-bill asserting constructive desertion. Both parties remained in the marital residence until July 30, 2000.

The husband was an attorney who practiced in Chesterfield County, and all the judges in that circuit recused themselves. Despite problems scheduling with the judge designate, the parties reached an initial settlement of *pendente lite* issues with reasonable dispatch. To facilitate the proceedings, the parties agreed to designate a judge *pro tempore*. See Code § 17.1-110. That judge presided over the balance of the proceedings.

Upon her designation in July 2000, the judge *pro tempore* entered an agreed order that approved the *pendente lite* agreement. That order directed the wife to leave the marital residence and the husband to pay *pendente lite* support of $1,350 per month. It set the equitable distribution hearing for October 2000, though the parties later agreed to continue that hearing to January 2001 and then to July 2001. The record reflects active and continuous discovery throughout that year.

In May 2001, the wife's attorney asked the husband's attorney to accommodate the wife by consenting to a continuance of the July hearing because it conflicted with her mandatory job training. The husband's attorney acquiesced in the request, but shortly after obtaining the continuance, the wife discharged her original attorney and retained a new attorney, who represented her for the balance of the trial proceedings. Her appellate counsel did not participate in the trial.

The trial court rescheduled the equitable distribution hearing for October 2, 2001. Shortly before that date, the wife again moved for a continuance asserting she did not have adequate discovery data. She also moved to compel discovery and for an alternate evaluation

date.  At that time, the husband moved to exclude expert testimony by the wife because she had not designated any expert witnesses.

In view of the various motions indicating discovery problems, the trial court entered a scheduling order that continued the hearing to January 8, 2002 and fixed November 28, 2001 as the discovery completion date.  Despite the order, the wife filed a motion to compel discovery on the discovery completion date.  The wife acknowledged she had not complied with the requests for discovery of her experts but maintained the husband already knew what her experts would say.  Two days before the January hearing, the wife's attorney delayed the hearing because she had incorrectly calendared the hearing and had created a conflict in the district court on the correct date.

The two days reserved for hearing evidence were not sufficient.  The proceedings were continued to February 21 but still not completed.  Illness forced rescheduling from April to July.  When testimony was completed July 31, it had consumed six full days.  The parties then filed extensive memoranda comprising 265 pages of the record.

The trial judge filed a timely, comprehensive, and meticulous letter opinion January 8, 2003.  Though carefully resolving most of the factual issues presented, the trial judge still had to order submission of supplementary data.  She required updated balances for several financial accounts because the data presented was incomplete.  The trial judge rendered a supplemental letter opinion February 10, 2003 fixing the account balances as of the date of separation.

A troublesome issue plagued the proceedings after the January 8, 2003 opinion and continued to delay resolution of equitable distribution.  The trial court had not received any evidence valuing the marital jewelry.  The wife did not comply with discovery and refused to make the jewelry available for appraisal by the husband's expert.  In the opinion letter, the trial court threatened monetary sanctions if the wife persisted in her refusal.  Her supplemental letter

opinion February 10 noted the wife still had not complied and threatened a sanction of $100 per day.

The trial court never imposed monetary sanctions, but the failure to comply forced an additional hearing on June 17, 2003 solely to value the jewelry. Even then, the wife moved for a continuance, a reconsideration of the earlier rulings, and a reappraisal of all assets. When the wife's expert testified, she had only appraised eight of the twenty-one items requiring appraisal.

In the supplemental letter opinion dated the day after the hearing, the trial court adopted the values presented by the husband's appraiser, awarded the husband $2,000 for attorney's fees incurred for the additional hearing, and directed counsel to prepare orders incorporating the decisions made beginning January 8, 2003. The final order was entered October 31, 2003. The husband filed nineteen objections to the final order. The wife filed twenty-six objections. Her last three are handwritten, but two were illegible.

The wife states ten questions in her brief. They reference the objections appended to the final decree when designating the place where she preserved the issues in the record. Unfortunately, the list of objections does not indicate where the wife raised and argued the issues at trial. The majority of the objections to the order redundantly argue the trial court erred by not accepting her version of the facts. Her questions on appeal assert the trial court erred in striking the evidence from her expert witnesses; in classifying, valuing, and dividing certain assets and debts; in failing to award appreciation on her contribution to the husband's separate property; and in being biased against her.

Appellant's opening brief "shall contain . . . [a] statement of the questions presented with a clear and exact reference to the page(s) of the transcript, written statement, record, or appendix where each question was preserved in the trial court." Rule 5A:20(c). "Questions 'unsupported by argument, authority, or citations to the record do not merit appellate consideration.'" Kane v.

- 4 -

Szymczak, 41 Va. App. 365, 370, 585 S.E.2d 349, 352 (2003) (quoting Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992)). See Rule 5A:20(e).

It is not the function of the appellate court "to comb through the record of [seven days of testimony] in order to ferret-out for ourselves the validity of these claims." Fitzgerald v. Bass, 6 Va. App. 38, 56 n.7, 366 S.E.2d 615, 625 n.7 (1988) (*en banc*). In order to be considered preserved on appeal, objections to a trial court's rulings must be stated with specificity. Rule 5A:18; Lee v. Lee, 12 Va. App. 512, 515, 404 S.E.2d 736, 738 (1991) (*en banc*).

The wife did not establish a trial record that permitted compliance with the appellate rules. Instead of summarily dismissing much of the appeal, we address the substantive issues in this case. The ultimate resolution of the equitable distribution issues was so dependent upon each of the many mesne decisions made by the trial court that we elect to conclude this lengthy, bitter contest definitively. "At some point we must 'ring the curtain down.'" Bowers v. Bowers, 4 Va. App. 610, 617-18, 359 S.E.2d 546, 550 (1987) (citation omitted). In addition, we must address the issues the husband presents. He contends the trial court erred in finding he intended to make a gift of a one-half interest in the marital residence; in setting the date of separation; in awarding the wife $5,000 from his retirement fund; and in failing to rule on a motion to reconsider the classification of two debts.

First, the wife contends the trial court erred in striking the testimony of her jewelry appraiser and her forensic accountant. The husband filed a request for designation of expert witnesses early in the discovery process. When the wife had not designated any experts, the husband moved to exclude her expert testimony. The trial court continued the hearing from October 2001 and fixed a discovery completion date to eliminate all discovery problems. The wife still failed to provide the requested information, and the husband again moved for sanctions.

The trial court ordered the wife to deliver her jewelry for appraisal by the husband's expert. At the January 2002 hearings, the wife named an appraiser but never provided information about her qualifications or her anticipated testimony. The recalcitrance forced postponement from January to June. While the wife blamed her default on the husband's failure to comply with her discovery requests, she never transformed her accusations into a justiciable issue for the trial court.

As of the hearing July 29, 2002, the wife had not complied with discovery. She presented a different appraiser than she had designated, and that witness only appraised eight of the twenty-one pieces in question. The appraiser based her opinion on the auction market rather than fair market value, which she conceded was not the proper standard to use in an equitable distribution case. The appraisal was dated January 2002 and indicated a preliminary evaluation existed by October 3, 2001. The wife did not provide it to the husband until ten days before the second stage of hearings in February 2002.

The trial court ultimately excluded the evidence because the wife had failed to comply with discovery. The wife concedes the appropriate standard of review is abuse of discretion. After trial counsel replaced the wife's original counsel, the trial court permitted the wife more than a year to develop her expert testimony. It patiently allowed abundant time for the wife to develop her evidence and withheld sanctions. Despite that, the wife never honored the discovery request, and when she finally presented her evidence, it only appraised a part of the jewelry and employed an inappropriate method. The wife offered repeated excuses that suggested diligence, but the record reflects obdurate failure to comply that needlessly and adversely affected the orderly and efficient adjudication of the case. The trial court properly exercised its discretion in striking the wife's evidence of the value of the jewelry. Bowers, 4 Va. App. at 618, 359 S.E.2d at 551.

The wife presented a second expert witness, Gerald Schultz, a forensic accountant. The trial court permitted him to testify before ruling on the husband's motion to exclude for failure to designate. The witness classified and valued various assets and debts. Cross-examination revealed that the wife had provided the witness incomplete data. For example, the wife's retirement account data did not include her contributions for over three years and lacked her employer's contributions altogether. Similarly, the witness incorrectly designated a Jeep vehicle as a marital asset because the wife failed to inform him it was leased not owned. When the problem became apparent, the trial court granted the wife's request to permit her expert to recalculate his results. However, she never acted on the opportunity to submit conclusions based on corrected data.

The wife's primary excuse for not designating that expert was her assertion that her delay did not prejudice nor surprise the husband. She claimed she could not identify the expert until April because the husband failed to give her required documents in a timely manner. The trial court heard the complete testimony of the accountant before deciding whether the wife's excuses justified non-compliance with discovery.

The witness did not appraise assets. He organized and compiled the maze of financial documents produced by the parties. His testimony would only have assisted the trial judge in discerning the facts that the documents themselves proved. Much of his testimony repeated the wife's explanations and characterizations of the data. Those explanations and characterizations were fully presented by the wife during her testimony.

The admission of expert testimony and the appropriate sanction for abuse of discovery are within the sound discretion of the trial court. Virginia Power v. Dungee, 258 Va. 235, 258, 520 S.E.2d 164, 177 (1999); Walsh v. Bennett, 260 Va. 171, 175, 530 S.E.2d 904, 907 (2000); Woodbury v. Courtney, 239 Va. 651, 654, 391 S.E.2d 293, 295 (1990). The trial court did not

abuse its discretion when it ultimately rejected the testimony. His evidence essentially summarized the documents and reiterated the explanations given by the wife. Her excuses for not complying with discovery orders did not justify her default.

Next, the wife contends a residence, designated the Krossridge property, was her separate property. She purchased the house during the marriage and before the date the court fixed as the date of separation. She did not move into it until after the trial court approved the parties' *pendente lite* agreement and ordered her out of the marital residence. The house was presumed to be a marital asset, and the wife bore the burden of rebutting that presumption. Fowlkes v. Fowlkes, 42 Va. App. 1, 6-7, 590 S.E.2d 53, 55 (2003).

The wife maintains the property was separate because she proved her father paid for it. Her evidence consisted of a single comment that her father paid for the house. She made the comment obliquely when explaining credit card charges. The trial court found the evidence insufficient but permitted the wife an opportunity to supplement her evidence. When the wife chose not to present further evidence, the trial court treated her objection to the classification as waived.

The wife argues that Huger v. Huger, 16 Va. App. 785, 433 S.E.2d 255 (1993), required the trial court to accept her evidence as sufficient proof because the husband did not rebut the wife's testimony. However, Huger does not eliminate the requirement that the evidence presented be found credible and of sufficient weight to rebut the presumption. The wife never introduced any financial records related to the purchase. The only evidence was her comment when explaining charges to purchase a rug for the house. Given the opportunity to present additional evidence to support her claim, she did not do so.

It was the trial court's prerogative to determine the weight and value of any evidence presented to it. "As the trial court heard evidence *ore tenus*, these factual findings will not be

disturbed unless plainly wrong or without evidential support." Bchara v. Bchara, 38 Va. App. 302, 309, 563 S.E.2d 398, 402 (2002). The trial court was not required to accept the modicum of evidence presented especially when a real estate purchase normally would generate precise documentation. See Anderson v. Anderson, 29 Va. App. 673, 688, 514 S.E.2d 369, 377 (1999). The wife's evidence did not rebut the presumption as a matter of law.

Next, the wife contends the trial court erred in valuing the marital residence. The trial court fixed the date for evaluation on the date it found the parties separated, July 30, 2000. It valued the residence at $453,000 based on the assessed value for the year 2000. The wife contends both the date the trial court used and the value it assigned are erroneous.

On September 13, 2001, the wife moved for an alternative evaluation date, but her pleading offered no reason for doing so, suggested no date to use, and listed no assets to which it would apply. Though the wife argues in her brief the court should have used the hearing date, January 8, 2002, as the evaluation date, Code § 20-107.3(A), a search of the record reveals the issue of selecting that date was never properly raised, presented to the trial court, and preserved for appeal.

After the trial court announced its valuation, the wife filed an objection to which she attached copies of county real estate records. Her counsel maintained the records showed comparable sales of properties in the neighborhood of the marital home. The trial court properly refused to consider the attachments as evidence. Statements of counsel are not evidence, Bateman v. Commonwealth, 183 Va. 253, 256-57, 32 S.E.2d 134, 136 (1944); Goin v. Commonwealth, 182 Va. 307, 310, 28 S.E.2d 631, 632 (1944), and may not form the basis upon which the trial court can base its decision.

Similarly, after the trial court rendered its final supplemental decision July 20, 2003, and shortly before the trial court memorialized all decisions by final order entered October 31, 2003,

the wife moved to reappraise the marital residence. Apparently for the first time, she claimed the values established by the court were outdated. The trial court did not abuse its discretion by proceeding to enter a final order. The untimely motion for a reappraisal would have negated four years of litigation at its culmination and commenced the dispute from the beginning.

The wife also objects to the value assigned to the marital home. The trial court heard conflicting opinions presented by the real estate appraisers. The husband's appraiser valued the marital residence at $400,000 as of 1995 and $440,000 as of November 2000. The wife's appraiser valued the residence at $569,000 as of August 2000. Neither party provided an appraisal as of July 30, 2000, the valuation date selected by the trial court. The lack of timely appraisals was partly caused by continued postponement of the equitable distribution hearing in July and October 2000. The trial court properly fixed the valuation as of July 30, 2000. The trial court was only presented with appraisals for that year. It had to work with the data made available.

"The trial court has discretion to resolve conflicting expert testimony to determine an asset's value." Howell v. Howell, 31 Va. App. 332, 341, 523 S.E.2d 514, 519 (2000). It may "choose among conflicting assessments of value as long as its finding is supported by the evidence." McDavid v. McDavid, 19 Va. App. 406, 413, 451 S.E.2d 713, 718 (1994). "The trial court's decision will not be disturbed on appeal unless plainly wrong or without evidence to support it." Howell, 31 Va. App. at 341, 523 S.E.2d at 519.

As carefully explained in her letter opinion of January 8, 2003, the trial judge interpolated the divergent appraisal data presented by incorporating the tax assessment for 2000 taxes to arrive at a value of $453,000. The court resolved the conflicts in the evidence and fixed a value. While tax assessment values are normally not used to determine fair market value of real estate, evidence established that Chesterfield County assessments were accurate evaluations. The trial

court did not abuse its discretion in accepting that evidence and in relying on that data to determine value.

Next, the wife contends the trial court erred in classifying marital debt, in valuing it as of the date of separation, and in allocating the debt equally. In her brief, she maintains the husband wasted assets and received reimbursement for certain debts during July 2000. That argument varies from the objection stated to the final decree. There, she objected that the trial court classified the debts without documentation of the source of the debts and included credit card debt that accrued during the month of separation to purchase a BMW "solely for the purpose of establishing an inflated balance to be offset against any award."

The wife has not pointed to a specific place in the record where the trial court erred in classifying a debt, and we do not find it from our review of the record. The wife testified generally about the credit card charges, but her testimony amounted to commentary on credit card statements. She did not substantiate her recollections and characterizations of the various transactions or her general complaints of waste. The husband's testimony disputed her testimony explaining the charges and the application of reimbursements.

Credible evidence supported both claims, but the documentation did not definitely support either claim. "Fashioning an equitable distribution award lies within the sound discretion of the trial judge[,] and that award will not be set aside unless it is plainly wrong or without evidence to support it." Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990). When there is a conflict in the evidence, the trial court must resolve the factual dispute. The record does not indicate the trial judge abused her discretion in classifying and distributing the debt.

Next, both parties appeal portions of the classification of the Advest Investment Account. The trial court ruled that this individual retirement account was the husband's separate property

but that the wife had contributed $5,000 of her separate property to it. The wife maintains she was entitled to $12,582.20 in accrued appreciation. The husband maintains the evidence did not support the finding that the wife contributed $5,000 of her separate funds to his IRA.

The wife testified that the husband needed to make a payment to his law firm to fund his 1994 retirement contribution. He asked her for a loan of her separate funds because he did not have sufficient funds to make the retirement contribution that was due by April 15, 1995. She wrote a check, number 1502, for $5,000, drawn on her separate funds at First Union Bank, and payable to their joint account at NationsBank. She testified the check funded a payment to the husband's law firm, which made the retirement contribution for the tax year 1994. First Union Bank check number 1502 was not introduced.

NationsBank check number 5022 was introduced. The wife wrote it for $13,320.50, payable to the husband's law firm, and dated April 13, 1995. The bank statement reflects the account lacked sufficient funds to honor the check when it was posted on April 13, 1995. The husband testified that after the bank notified him of the insufficiency, he deposited funds to cover the delinquency that he had received from his law firm in repayment of a loan. The bank statement reflected a deposit of $5,071.40 posted Friday, April 14, 1995. It also showed a deposit of $5,000 posted the following Monday. The First Union Bank statement showed that check 1502 was debited against the wife's separate account April 18, 1995.

The husband maintains the documents prove as a matter of law that the wife never contributed separate funds to his individual retirement account. He argues check 1502 for $5,000 was not deposited to their joint account until April 17, 1995, which was after check 5022 for the retirement contribution cleared.

When separate property is contributed to marital property and is retraceable, and not a gift, the separate property retains its original classification. Code § 20-107.3(A)(3)(d); Watts v.

- 12 -

<u>Watts</u>, 40 Va. App. 685, 701, 581 S.E.2d 224, 232 (2003). Neither side presented definitive proof of their claim. The documentary evidence was not complete, and a key document, check 1502 for $5,000, was not introduced. The bank statements that were admitted documented the transactions of the financial institutions as they accepted and cleared items, but the statements did not fully define the complete details of all the financial actions involved.

The evidence showed that a check was drawn on the wife's separate account for $5,000 about the time a check was written on their joint account to fund the husband's retirement account. The evidence showed the joint account had insufficient funds when the check to the firm was posted. The parties supplemented the documentary evidence with their explanations, which were in conflict though each was supported in some respects by the documents they stressed. The ultimate characterization of the banking transactions rested on the testimony of the parties about very detailed banking transactions. Their individual recollections supported their respective positions.

While the trial court found the wife had proved her separate contribution, it also found that she failed to prove any appreciation in its value. The evidence permitted both decisions. The evidence of appreciation was the wife's general estimate unsupported by documentation or expert testimony. Her evidence amounted to her impression that the value had increased by nearly $13,000. It did not provide a sufficient basis to determine with any degree of certainty that her contribution increased by the amount she asserted. <u>Anderson</u>, 29 Va. App. at 685-87, 514 S.E.2d at 376. <u>Cf.</u> <u>Moran v. Moran</u>, 29 Va. App. 408, 416-17, 512 S.E.2d 834, 838 (1999) (error not to consider passive income from husband's separate property contributed pre-marriage to his pension plan where his expert testified to the amount of passive income the property could have earned).

The fact finder, who heard the evidence *ore tenus*, must resolve the conflicts. We will not set aside the determination unless plainly wrong or without evidence to support it. Code § 8.01-680; <u>Howell</u>, 31 Va. App. at 341, 523 S.E.2d at 519. Given the evidence presented, we conclude credible evidence supported the wife's contention that she contributed $5,000 separate property to the husband's retirement account. We further conclude the evidence did not support her claim of appreciation.

Next, the wife contends the trial court erred in classifying her First Union CAP account as marital property. That account, which wife owned before the marriage, combined the features of a brokerage account and a checking account. She claimed that she deposited $11,000 that represented separate funds from a delinquent child support payment and that she made several loans of the funds to the husband that he never repaid. However, the wife's documentary evidence did not trace any separate property through the account and did not substantiate her claim that she lent funds to the husband. The evidence did establish that over the course of the marriage the parties commingled funds in the account.

"Property which is initially separate may become marital property either by express agreement, or by the manner in which it is maintained." <u>McDavid</u>, 19 Va. App. at 410-11, 451 S.E.2d at 716. When a party fails to segregate separate property during the marriage, and instead commingles it, the property must be classified as marital property subject to equitable distribution. <u>Smoot v. Smoot</u>, 233 Va. 435, 441, 357 S.E.2d 728, 731 (1987) (superceded by statute on other grounds). The evidence showed the parties commingled their funds in the account and permitted the trial court to find the remaining balance of $6,183.40 was marital property.

Next, the wife contends her engagement ring was her separate property because it was acquired before the marriage. Other than statements by the wife's trial counsel, no evidence

- 14 -

indicated the ring was a pre-marital gift or when the wife acquired it. Statements of counsel are not evidence. Bateman, 183 Va. at 256-57, 32 S.E.2d at 136; Goin, 182 Va. at 310, 28 S.E.2d at 632. They may not form the basis upon which the trial court based its decision. The record fails to support the wife's contention; indeed, it shows that she designated all the jewelry as a marital asset in one of her exhibits.

Next, the wife contends the trial court erred in classifying the Traveler's Life and Annuity IRA and the American Funds IRA as the husband's separate property. However, her own evidence corroborated the trial court's ruling and no evidence refuted it.

The wife's evidence acknowledged that the DuPont Savings and Investment Account was the husband's separate property. The husband testified that he rolled the DuPont account into a Solomon Smith Barney IRA and later used that to fund the purchase of the Traveler's IRA. That explanation corresponded to the wife's evidence. Nothing indicated that marital funds went into this account or that any increase in the account was due to either party's efforts.

Similarly, the wife's evidence supported the finding that the American Funds IRA was separate property. Her exhibits assign it a premarital value of $44,139.53. The fund's advisor testified that no contributions were made to the account after 1993, two years before the marriage. No evidence showed that contributions were made to this account during the marriage.

"Classification of property as marital or separate is a factual issue that is determined by whether the property was acquired before or during marriage. Property acquired before marriage is separate unless it is transmuted; property acquired during marriage is presumed to be marital." Gamer v. Gamer, 16 Va. App. 335, 345, 429 S.E.2d 618, 625 (1993). The trial court did not err in classifying the two accounts as the husband's separate property.

Next, the wife argues the trial court erred in valuing her Lexus automobile. She first contends the trial court used an improper valuation date, but she did not preserve any objection

- 15 -

to the evaluation date used for the automobile. She also contends her evidence established the correct value.

Both parties relied on valuations obtained from the Kelly Bluebook web site. The wife used a 63,000 mileage figure and obtained a value of $15,695. The correct mileage was 48,000 miles. The husband used a figure of 45,000 miles and obtained a retail value of $20,615 and a trade-in value of $13,690. The trial court selected the average of those two values submitted by the husband, $17,172.50. The trial court may not base its valuations on mere guesswork, but the parties have the burden to provide the court with sufficient evidence from which it can value their property. Bosserman v. Bosserman, 9 Va. App. 1, 5, 384 S.E.2d 104, 107 (1989). We cannot say that the trial court erred in resolving the conflicting evidence before it.

Next, the wife contends the trial court erred in valuing the life insurance policy and her fur coat. She raises these complaints for the first time on appeal, and we will not consider an argument raised for the first time on appeal. Rule 5A:18; Ohree v. Commonwealth, 26 Va. App. 299, 307-08, 494 S.E.2d 484, 488 (1998). If the issue was raised before the trial court, we will not search the record for where the objection was made and argued. Buchanan, 14 Va. App. at 56, 415 S.E.2d at 239.

Finally, the wife maintains the trial judge was biased. As support for this charge, she reiterates the adverse rulings that comprise her appeal. The wife did not present this issue to the trial court. More importantly, nothing in the record suggests its validity.

The husband raised four issues in his appeal. He contends the trial court erred in finding he made a gift of a one-half interest in the marital home; in finding the parties separated July 30, 2000; and in not ruling on his motion to reconsider classification of two debts. His appeal of the award to his wife of $5,000 from his Advest Investment account has been addressed.

Before their marriage, each party owned a house. When they married, they planned to sell both houses and to purchase a new residence. The wife's house sold quickly, and she moved into the husband's home at 3860 Reeds Landing Circle. When his house did not sell quickly, the parties agreed to retain it but to redecorate it so that it would be their "new" marital home. The wife testified that the husband told her he wanted the house to be theirs.

The husband conveyed the wife a half interest in his residence. He testified that he granted her the property pursuant to an agreement that she would pay him the $90,000 she received from the sale of her house. He transferred title without receiving the $90,000 that he claims was the actual consideration. He stated that he did not intend a gift. He paid no recording taxes on the transaction.

The husband argues that Utsch v. Utsch, 266 Va. 124, 128, 581 S.E.2d 507, 508 (2003), mandates a finding that the transfer was not a gift. In Utsch, the husband retitled his separate property jointly as tenants by the entirety. He executed a deed labeled "deed of gift," which recited a consideration of "love and affection" and which referred to the precise statute that exempted deeds of gifts from recording taxes. The Supreme Court held the deed of gift was unambiguous proof by clear and convincing evidence of donative intent. Parol evidence was not admissible to refute the gift. Id. at 129, 581 S.E.2d at 509.

In this case, the deed was not labeled as a deed of gift but as "Pursuant to Virginia Code Section 58.1-806." That code section imposes a reduced recording tax of 50 cents on partition deeds or deeds pursuant to a decree of divorce or separate maintenance. Neither provision applied to the transfer, and the clerk's receipt on the deed showed that no recording tax was paid. While the deed recited consideration "of Ten Dollars ($10.00), cash in hand and other valuable consideration, paid by the grantee," it also acknowledged receipt of the consideration. The

husband acknowledged the consideration was never paid, and the record indicates that the consideration he would have received was less than the value of the interest he conveyed.

Unlike the deed of gift in Utsch, the deed in this case was drafted by the husband, an attorney, and was ambiguous. It did not establish the lack of donative intent as a matter of law, and parol evidence was necessary to interpret it. The testimony of the parties amounted to characterizations of antebellum transactions entered when expectations for their marriage were sanguine. Other than the deed, which was ambiguous, no documentary evidence supported the conflicting testimony of the parties.

In order to prove an interspousal gift, the wife must prove the husband's donative intent and the nature and extent of that intent. Lightburn v. Lightburn, 22 Va. App. 612, 616-17, 472 S.E.2d 281, 283 (1996); Theismann v. Theismann, 22 Va. App. 557, 565-66, 471 S.E.2d 809, 813, aff'd, 23 Va. App. 697, 479 S.E.2d 534 (1996) (*en banc*). The conflicting testimony permitted the trial court's factual finding.

Next, the husband maintains the parties separated July 31, 1999, the date he alleged the wife deserted the marriage by forcing him to move to a separate bedroom. He stresses that the wife acknowledged in her answer and cross-bill that they had separate bedrooms as of August 2, 1999. He notes the parties entered a *pendente lite* agreement February 15, 2000 that required her to move from the marital home and the wife had purchased her own house by March 2000.

The wife always maintained that the parties and their blended families continued to live together in the marital home though the parties had separate bedrooms. She testified that familial relations continued as they had in the past, and as they had when the two had physically separated earlier during the marriage. She argues the separation did not occur until she actually moved out of the house.

Whether and when the parties "'lived separate and apart without cohabitation' is a fact-based inquiry, requiring examination of all the circumstances before the court." Bchara, 38 Va. App. at 310, 563 S.E.2d at 402 (referring to Code § 20-91(A)(9)(a)). The Supreme Court noted, "'"matrimonial cohabitation" consists of more than sexual relations. It also imports the continuing condition of living together and carrying out the mutual responsibilities of the marital relationship.'" Schweider v. Schweider, 243 Va. 245, 248, 415 S.E.2d 135, 137 (1992) (quoting Petachenko v. Petachenko, 232 Va. 296, 299, 350 S.E.2d 600, 602 (1986)).

This issue was thoroughly litigated, and the trial court heard the conflicting evidence about their relationship. It found the parties did not separate until it approved the *pendente lite* agreement and ordered the wife to leave. The husband relied on the maintenance of separate bedrooms and his filing for divorce. The wife countered with evidence that the parties maintained a familial relationship. Because the evidence supported both contentions, see Bchara, 38 Va. App. at 310, 563 S.E.2d at 402, we cannot say the trial court erred in reaching the decision that it reached.

Finally, the husband contends the trial court failed to rule on factual issues he raised in his motion for reconsideration. That motion was filed June 4, 2003 and addressed the classification of debts made January 8, 2003. The motion asserts the trial court failed to rule whether the husband's American Express account and debts owed to The Wallpaper Place were marital debts.

The husband originally introduced American Express statements as part of an exhibit covering several separate charge accounts all of which he broadly characterized as marital debts. He also presented numerous receipts for purchases he and the wife made at a store, The Wallpaper Place. His testimony categorized the various charges as his separate debt, her separate debt, or their marital debt. In its letter opinion January 8, 2003, the trial court made

detailed findings of which of the many obligations incurred by the parties were marital debts. The husband's American Express debt and The Wallpaper Place debt were not listed. The opinion did not attempt to enumerate its negative findings. The opinion made clear findings as to which obligations were marital debt. At no point during the period the trial court called for supplemental submissions and issued additional rulings to complete the evaluation of marital debts did either party assert that the omission of those two debts was a failure to act rather than a ruling against the husband.

A motion to reconsider is addressed to the sound discretion of the trial court. Morris v. Morris, 3 Va. App. 303, 307, 349 S.E.2d 661, 663 (1986). The husband's motion moved the trial court to revisit evidence and rulings made months before on relatively minor details. It asserted for the first time the husband's contention that the failure to state the debts were marital was a failure to rule rather than an adverse ruling. Code § 8.01-678(2) provides:

> When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any other defect, imperfection, or omission in the record, or for any error committed on the trial.

The trial court did not abuse its discretion in denying that portion of the motion to reconsider.

In conclusion, the trial court exercised its discretion appropriately, applied the law correctly, and made findings supported by the evidence. The record reflects it considered all the evidence and decreed an equitable and just result. Code § 8.01-678. Smoot, 233 Va. at 443, 357 S.E.2d at 732, held:

> Unless it appears from the record that the chancellor has abused his discretion, that he has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying his resolution of the conflict in the equities, the chancellor's equitable distribution award will not be reversed on appeal.

We will not disturb on appeal a ruling where the record and the evidence indicate the parties had a fair trial.  Accordingly, we affirm.

<u>Affirmed.</u>