*VIRGINIA:*

King William County and
  Virginia Association of Counties Group,                                                    Appellants,

 against                    Record No. 0576-15-2
                            Claim No. VA00000440546

Linda Jones,                                                                                  Appellee.

Upon a Petition for Rehearing En Banc

Before Chief Judge Huff, Judges Humphreys, Petty, Beales, Alston, McCullough,
Chafin, Decker, O'Brien, Russell and AtLee

On December 15, 2015 came the appellee, by counsel, and filed a petition requesting that the Court set aside the judgment rendered herein on December 1, 2015, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof, the petition for rehearing *en banc* is granted with regard to the issue(s) raised therein, the mandate entered herein on December 1, 2015 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with the schedule set forth in Rule 5A:35(b). The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter. An electronic version of each brief shall be filed with the Court and served on opposing counsel. In addition, twelve printed copies of each brief shall be filed. It is further ordered that the appellee shall file an electronic version and twelve additional copies of the appendix previously filed in this case.[1]

A Copy,

Teste:

Cynthia L. McCoy, Clerk
*original order signed by a deputy clerk of the*
By:    *Court of Appeals of Virginia at the direction*
       *of the Court*

Deputy Clerk

---

[1] The guidelines for filing electronic briefs and appendices can be found at www.courts.state.va.us/online/vaces/resources/guidelines.pdf.

PUBLISHED

Present: Judges Decker, Russell and AtLee
Argued at Richmond, Virginia


KING WILLIAM COUNTY AND
 VIRGINIA ASSOCIATION OF COUNTIES GROUP

                                                                OPINION BY
v.        Record No. 0576-15-2                    JUDGE WESLEY G. RUSSELL, JR.
                                                                DECEMBER 1, 2015
LINDA JONES


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            J. David Griffin (Winchester Law Group, P.C., on brief), for
            appellants.

            Robert L. Flax (Robert L. Flax, P.C., on brief), for appellee.


        King William County and its insurer ("employer") appeal the Commission's award of

disability benefits to the claimant, Linda Jones. We reject employer's challenge to certain

factual determinations made by the Commission; however, because the record does not establish

that claimant's failure to find employment after having been laid off by employer was causally

related to her partial disability, we reverse the Commission's award of benefits.

                                        BACKGROUND

        Claimant worked as a part of employer's custodial staff for a number of years. On April

13, 2011, claimant fell from a 10-foot ladder while she was, as part of her duties, cleaning a

window in the courthouse lobby. There is no dispute that claimant suffered injuries in the fall

and that the fall arose out of and in the course of her employment. She returned to work for

employer, where she worked until June 30, 2011.

        In April 2011, claimant filed a claim for benefits, alleging injuries to her back and ribs as

a result of her fall. Her claim also sought medical treatment benefits for liver disease. Claimant,

however, withdrew the initial claim. In March 2013, claimant refiled her claim, alleging injuries to "her neck, back, left shoulder, ribs and hands." She alleged disability continuing from April 14, 2011. Employer contested the claim, arguing willful violation of a safety rule, failure to market residual skills, the economic loss rule, and doctor shopping resulting in unauthorized care.

A hearing before the deputy commissioner was commenced on September 10, 2013, but was continued to and recommenced on January 7, 2014. At the January 7th hearing, claimant withdrew her claim for liver disease treatment and amended the claim for her disability payments to begin July 1, 2011.

Prior to entertaining witnesses at the January 7th hearing, the deputy commissioner confirmed the stipulations that the parties had reached prior to the hearing. Specifically, the parties confirmed that they agreed that 1) claimant's pre-injury wage was $351.61 per week; 2) claimant fell off of a ladder while washing windows in the courthouse lobby on April 13, 2011; 3) at some points between the accident and June 30, 2011, claimant worked for the county in a light-duty capacity; 4) claimant has not worked for employer from July 1, 2011, to the present; and 5) since July 1, 2011, claimant has been in a light-duty capacity. In addition, employer also stipulated that "if the willful misconduct defense fails, at a minimum the Employer would agree that the Claimant would have a compensable injury to the neck, back, left shoulder, ribs, and hands." At no point in the proceedings below did the parties alter, amend, or withdraw the stipulations.

The deputy commissioner heard testimony from five witnesses. Of note, employer offered the testimony from two employees to establish that a safety rule prohibited custodial staff from using ladders and that, to clean "high" windows, such as those in the courthouse, custodians

were required to use a squeegee on a stick. The employer's witnesses testified that claimant was aware of the rule against using ladders.

Claimant testified that there was no rule against using ladders to clean the windows. She said that she routinely used the ladder to clean the windows and that employer's witnesses had seen her do so. She said no custodian had ever been disciplined for using a ladder when cleaning the windows. Claimant also testified about her marketing efforts after the custodial positions were outsourced.

The evidence at the hearing established that, prior to claimant's work injury, the employer had decided to outsource its custodial needs. Specifically, it eliminated all custodial positions and entered into a contract with Jani-King to provide the custodial services. In a statement to the deputy commissioner, claimant's counsel indicated that all of employer's former custodians, except for claimant, had been hired by Jani-King to provide the same custodial service. The evidence, however, did not support this claim. Rather, the evidence was that only one of employer's former custodians was hired by Jani-King, and she was not hired until a year after Jani-King began providing the custodial services.

On January 27, 2014, the deputy commissioner issued her ruling denying the claim. In her opinion, she notes "the difference in testimony between the claimant's testimony and the testimony of the employer's representative . . . and the employer's witness." The deputy commissioner then found that

> the employer had a safety rule prohibiting use of ladders by
> custodial staff. We accept [claimant's supervisor's] testimony that
> he trained [her] on how to clean windows, gave her a "squeegee"
> and advised her of the safety rule not to use a ladder. Based on the
> parties' stipulations, we find the claimant fell off a ten-foot ladder
> while washing windows in the courthouse lobby. We find that the
> claimant's use of a ladder was a violation of the employer's safety
> rule.

Although the claim was denied based on willful misconduct, the deputy commissioner further determined that, "[i]f the claim [were] compensable, based on the claimant's testimony, . . . we would find the claimant reasonably marketed her remaining work capacity from July 4, 2011 through September 21, 2012."

Claimant sought review of her claim by the full Commission. The full Commission issued its ruling on July 8, 2014. Contrary to the deputy commissioner, a divided Commission found that there had been no safety-rule violation. It based its decision on its finding that employer did not prove a violation of a known safety rule. In support of its ruling, it relied on the supervisor's testimony, which the Commission characterized as "vague, imprecise, and inconsistent[,]" especially with respect to his statements regarding training claimant on how to clean the windows. The Commission found that "[t]he greater weight of the evidence establishes there was no written rule and no specific procedure for cleaning" the windows. The Commission further noted, "[e]ven if a safety rule was in place, the safety rule was not enforced, as the claimant had used the ladder on a regular basis and received no correction from the employer." The Commission remanded the case to the deputy commissioner for further proceedings.

The matter was heard on remand on July 30, 2014. The deputy commissioner considered the evidence from the prior hearings. She also requested position statements from the parties. Both parties complied, filing their respective position statements on July 29, 2014. Neither party expressly sought to alter, amend or withdraw any of the previously agreed upon stipulations in the position statements.[1]

---

[1] There is no transcript of the July 30, 2014 proceeding in the record; however, claimant does not argue that anything that such a transcript would reveal affects the appeal. To the extent that employer makes such an argument, it is foreclosed because it was employer's responsibility as appellant to provide us with a sufficient record to rule on its appellate issues. Smith v. Commonwealth, 16 Va. App. 630, 635, 432 S.E.2d 2, 6 (1993).

On August 11, 2014, the deputy commissioner issued her opinion on remand. She first noted that the employer previously had agreed that, should the willful misconduct defense fail, claimant sustained a compensable injury. Accordingly, the deputy commissioner then addressed the nature of the injury, finding that the claimant failed to prove a compensable injury to the neck, back or hands, but that she did sustain compensable injuries to her ribs and left shoulder. The deputy commissioner reiterated that claimant reasonably marketed her remaining work capacity. Nevertheless, the deputy commissioner again found that claimant was not entitled to disability benefits, determining that claimant had been released to her pre-injury job. The deputy commissioner further determined that, had partial incapacity been found, appellee's claim would be barred by the economic loss rule, because there was no causal connection between her lost wages and her injury.

Claimant again appealed the deputy commissioner's decision to the full Commission, challenging the deputy commissioner's findings as to which body parts had been injured, whether claimant had returned to full duty, and application of the economic loss rule.

A divided Commission again reversed the deputy commissioner's findings. The Commission elected to accept and rely on the parties' stipulations and found that "the claimant performed light duty" and decided to "enter an award based upon the deputy commissioner's finding that the claimant adequately marketed her residual work capacity." The Commission similarly relied on the parties' stipulation as to the extent of claimant's injuries: "[t]he medical award should reflect the parties' stipulations to include injuries to the neck, back, left shoulder, ribs, and hands." With respect to the economic loss rule, the Commission determined that because "the claimant was laid off from her selective employment job, she was entitled to continuing disability benefits."

Ultimately, the Commission entered an award of $234.41 per week for disability benefits beginning July 1, 2011, and reasonable and necessary medical benefits for industrial injuries to the neck, back, left shoulder, ribs, and hands.

This appeal followed, in which employer presents the following assignments of error:

> 1. The Workers' Compensation Commission erred in its disregard of the [d]eputy [c]ommissioner's credibility findings of the witnesses and reversal of her findings on two separate hearings.

> 2. The Workers' Compensation Commission erred in its reversal of the [d]eputy [c]ommissioner and their determination that the claimant did not violate a safety rule/willful misconduct violation and that the claimant's injuries were not a result of that violation.

> 3. The Workers' Compensation Commission erred in its reversal of the [d]eputy's determination that the claimant had not met her burden of proof on what body parts were in fact injured.

> 4. The Workers' Compensation Commission erred in its reversal of the [d]eputy [c]ommissioner's determination that the claimant was working in a light capacity job, but at her pre-injury job level.

> 5. The Workers' Compensation Commission erred in its reversal of the [d]eputy [c]ommissioner's determination that the claimant's lost time was barred by the economic loss rule.

> 6. The Workers' Compensation Commission erred in its application of the law to the facts of this case and the sufficiency of the evidence to put the claimant under a continuing open award and ruling that the claimant met her burden of proof for ongoing marketing.[2]

ANALYSIS

Employer's first four assignments of error are challenges to the factual findings of the Commission. We must uphold the Commission's determination if there is credible evidence in the record to support it. VFP, Inc. v. Shepherd, 39 Va. App. 289, 292, 572 S.E.2d 510, 511

---

[2] Based on our resolution of employer's first five assignments of error, we do not reach this assignment of error.

- 6 -

(2002). Additionally, we grant the Commission all reasonable inferences that can be drawn from the evidence. Id. at 292, 572 S.E.2d at 512.

Employer argues that the traditional standard of review should not apply in this case because, for each of the first four assignments of error, the Commission reversed the factual findings of the deputy commissioner.[3] Citing our decision in Goodyear Tire and Rubber Co. v. Pierce, 5 Va. App. 374, 363 S.E.2d 433 (1987), employer argues that the factual findings of the deputy commissioner should have been adopted by the Commission because the deputy commissioner heard and observed the witnesses, and therefore "was . . . in the best position to weigh the hearing testimony . . . ."

Employer essentially argues that the Commission should have deferred to the deputy commissioner's factual findings for the same reasons appellate courts defer to trial courts on factual findings. The view that the Commission essentially sits as an appellate court when reviewing the decision of a deputy commissioner simply is mistaken.

Deputy commissioners "have the power to . . . take testimony and hear the parties at issue and their representatives and witnesses, decide the issues in a summary manner, and make an award carrying out the decision." Code § 65.2-203. Nevertheless, their decisions, including their factual determinations, are subject to review.

In the normal course, a party aggrieved of a deputy commissioner's decision may seek review of that decision before the full Commission. Pursuant to Code § 65.2-705, an aggrieved party may submit an "application for review . . . to the Commission within 30 days after issuance of [the deputy commissioner's] award . . . ." Upon such application, "the full Commission . . . *shall review the evidence* . . . ." Code § 65.2-705 (emphasis added). After conducting its

---

[3] Despite conceding that "the Commission is not bound by the [d]eputy [c]ommissioner's findings . . . ," employer still argues that it was reversible error for the Commission not to adopt those findings.

evidentiary review, "*[t]he Commission shall make an award . . . together with a statement of the findings of fact,* rulings of law, and other matters pertinent to the questions at issue . . . ." Id. (emphasis added). Having directed in Code § 65.2-705 that the Commission make findings of fact when it reviews the decision of a deputy commissioner, the General Assembly then mandated that the facts so found by the Commission "upon such review, as provided in § 65.2-705, shall be conclusive and binding as to all questions of fact." Code § 65.2-706. Thus, the statutory scheme makes clear that the Commission reviewing a decision of a deputy commissioner sits as fact finder and that the facts it finds are binding on this Court on appellate review.

As employer notes, we created a limited exception to this general rule in Goodyear, 5 Va. App. 374, 363 S.E.2d 433. Specifically, we engrafted onto the statutory scheme a requirement that when a deputy commissioner makes a

> specific, recorded observation of a key witness' demeanor or appearance in relation to credibility[, such observation] is an aspect of the hearing that the [C]ommission may not arbitrarily disregard. When the [C]ommission does not follow such a finding, the record should indicate that the [C]ommission did not arbitrarily ignore the finding.

Id. at 382, 363 S.E.2d at 437.

In the instant case, employer conceded at oral argument that the deputy commissioner did not tie her resolution of the factual issues to the "demeanor or appearance" of the witnesses. Consequently, Goodyear's limited exception to the general rule has no application to this case. Accordingly, we review the first four assignments of error under the traditional, deferential standard. Shepherd, 39 Va. App. at 292, 572 S.E.2d at 511-12. See also Code § 65.2-706.

<u>Commission's Decision to Credit Claimant's Evidence</u>

In its first assignment of error, employer does not argue that claimant offered no evidence on key evidentiary issues. Rather, employer essentially argues that, on the relevant evidentiary

- 8 -

issues, the Commission should have adopted the deputy commissioner's finding that employer's evidence was more persuasive than claimant's. Such an argument ignores that the Commission sits as the ultimate fact finder when conducting a review pursuant to Code § 65.2-705. Code § 65.2-706. Here, a majority of the Commission simply credited claimant's evidence on key issues over employer's evidence, something it was entitled to do.[4] Accordingly, because claimant offered competent evidence on the issues encompassed by employer's first assignment of error, the Commission did not err by crediting that evidence.

Knowing Violation of a Safety Rule

In its second assignment of error, employer contends that the Commission erred in finding that claimant did not knowingly violate a safety rule by utilizing a ladder while cleaning the windows in the courthouse. Employer offered evidence that there was such a rule and that claimant was aware of it; claimant testified that there was no such rule and that custodians routinely used a ladder when cleaning the windows and that no one was ever disciplined for so using a ladder. Based on its review of the evidence, the Commission found that "there was no written rule and no specific procedure for cleaning the courthouse lobby windows. The claimant was required to use a ladder to clean the windows." Furthermore, in an alternative finding, the Commission found that "[e]ven if a safety rule was in place, the safety rule was not enforced . . . ." Either of these findings is sufficient to defeat employer's defense of a knowing

---

[4] As noted above, this case does not fall within the Goodyear exception. Even if it did, the Commission's crediting claimant's evidence on the issues encompassed by employer's first assignment of error would not be precluded because the Commission offered specific reasons for why it rejected the testimony of employer's key witness, Brian Purvis. Specifically, the Commission found that

> [t]he testimony of Brian Purvis, claimant's supervisor, was equivocal. A close examination of Purvis' testimony reveals that it was vague, imprecise, and inconsistent . . . . Purvis' imprecision, and his lack of knowledge of such critical facts undermined his credibility . . . . His testimony lacked credibility.

violation of a safety rule. See Buzzo v. Woolridge Trucking, 17 Va. App. 327, 332, 437 S.E.2d 205, 208 (1993). Given that claimant's evidence provided a sufficient basis for both of these findings, the Commission's factual determinations regarding the safety rule issue are binding on appeal.

### Stipulation Regarding Which of Claimant's Body Parts Were Injured

In its third assignment of error, employer alleges that the evidence failed to establish that claimant suffered an injury to her neck, back, and hands. This, of course, ignores that, at the January 7th hearing, employer stipulated that claimant suffered an injury to her neck, back, and hands. Specifically, the following colloquy occurred:

> Deputy Commissioner:
>
> Okay, thank you. I'll make a note of that. That the Employer would agree that if the willful misconduct defense fails, at a minimum the Employer would agree that the Claimant would have a compensable injury to the *neck*, *back*, left shoulder, ribs, and *hands*.
>
> Employer's Counsel:
>
> *Correct*.
>
> Deputy Commissioner:
>
> Okay. Thank you. That might help shorten the hearing also.[5]

(Emphasis added).

Courts have long encouraged parties to stipulate to undisputed issues. Such stipulations focus courts on issues that are actually in dispute and promote judicial economy by limiting the issues that are subject to the taking of evidence. For stipulations to achieve this purpose, a party

---

[5] Although the deputy commissioner accepted the stipulation at the hearing, she, without addressing the stipulation, ultimately found that claimant had not met "her burden of proof that [she suffered] injuries to" her neck, back, and hands. Given that the Commission ultimately accepted the stipulation on review, the deputy commissioner's tacit rejection of the stipulation is moot.

- 10 -

agreeing to a stipulation must be bound by it. Fountain v. Commonwealth, 64 Va. App. 51, 58, 764 S.E.2d 293, 296 (2014) ("Parties are bound by their factual stipulations." (citing Barrick v. Board of Supervisors, 239 Va. 628, 631, 391 S.E.2d 318, 320 (1990))). Accordingly, a valid stipulation constitutes credible evidence.

Here, the Commission decided that employer was bound by the stipulation. Because the Commission accepted the stipulation, claimant was relieved of any duty to offer evidence to prove the conceded issues. Having relieved claimant of her obligation to adduce such evidence, employer cannot now argue that she failed to offer evidence to support that she suffered an injury to her neck, back, and hands. Because the stipulation provides a sufficient evidentiary basis for the Commission's findings, we will not disturb those findings on appeal.

Claimant's Light-Duty Status

In its fourth assignment of error, employer argues that the Commission erred in finding that the evidence supported a conclusion that claimant was working in a light-duty capacity at the time the employer terminated the custodial positions. Once again, this ignores the stipulations of the parties. At the January 7th hearing, the following colloquy occurred:

> Deputy Commissioner:
>
> We have several stipulations that I believe will shorten the hearing considerably. . . . And fifth, *from July 1st 2011 through the present the Claimant has been in a light duty capacity. Have I correctly stated the stipulations . . .?*
>
> Claimant's Counsel:
>
> Yes, Ma'am. . . .

Employer's Counsel:

*You have, thank you.*[6]

(Emphasis added). For the reasons stated above, this stipulation provided the Commission with a sufficient evidentiary basis for reaching its conclusion that the "claimant performed light duty." The stipulation, however, was augmented by employer's action later in the January 7th hearing. Specifically, when claimant's counsel began asking questions as to what job functions claimant was performing for employer after her injury, employer objected, arguing that "I'm not sure how any of this is relevant. *There's a stipulation that she was able to work light duty. She in fact worked light duty.* What she did really is not relevant to any of the issues pending before you." (Emphasis added).

It takes a certain amount of chutzpah[7] to argue on appeal that the claimant offered no evidence after objecting below to such evidence on the grounds that the issue was uncontested because of a stipulation to which one had agreed. Based on the stipulation and the objection of employer at the January 7th hearing, there was a sufficient evidentiary basis for the Commission to conclude that claimant was in a light-duty capacity.[8]

---

[6] At the January 7th hearing, the deputy commissioner indicated that the stipulation was accepted. In her ultimate opinion, she recognized that the parties had stipulated that the claimant had a light-duty status, but found that the evidence did not support such a conclusion. In light of the Commission's acceptance of the stipulation on review, the deputy commissioner's rejection of the stipulation is moot.

[7] "The most famous definition of 'chutzpah' is, of course, itself law-themed: chutzpah is when a man kills both his parents and begs the court for mercy because he's an orphan." Alex Kozinski & Eugene Volokh, Lawsuit, Shmawsuit, 103 Yale L.J. 463, 467 (1993).

[8] As claimant notes on brief, adopting the stipulation that claimant was in a light-duty capacity is essentially a finding that she was partially disabled for the purposes of Code § 65.2-502.

<u>Elimination of the Custodial Positions</u>

In its fifth assignment of error, employer contends that its responsibility to pay disability benefits to claimant ended when employer eliminated all of the custodial positions. Employer reasons that the loss of her position was not caused by her partial disability, and therefore, she is not entitled to continued benefits. Claimant counters that employer is required to continue to pay her disability benefits because she remains partially disabled, and therefore, is at a disadvantage in the marketplace.[9]

We review whether the elimination of positions terminates an employer's responsibility to pay continuing benefits to a partially disabled worker *de novo*. <u>Carr v. Atkinson/Clark/Shea, A Joint Venture</u>, 63 Va. App. 281, 283, 756 S.E.2d 191, 192 (2014) (citation omitted). In conducting our review, we are mindful that "the provisions of the [Workers'] Compensation Act are to be liberally construed," but recognize that it was not intended to serve as a substitute for "unemployment insurance . . . ." <u>Vega Precision Laboratories, Inc. v. Jwayyed</u>, 218 Va. 1026, 1032, 243 S.E.2d 228, 231 (1978).

Professor Larson has summarized the general rule as follows: "Loss of employment should not be deemed due to disability if a worker without the disability would lose employment or suffer a reduction in earnings under the same economic conditions . . . ." 7 Lex K. Larson, <u>Larson's Workers' Compensation Law</u> § 84.03 (Matthew Bender, rev. ed. 2015). Having stated

---

[9] We note that the claimed wage loss is due to claimant's *partial*, as opposed to total, disability. Thus, our review focuses on the claimant's alleged economic loss as opposed to her loss of earning capacity. <u>McKellar v. Northrop Gruman Shipbuilding, Inc.</u>, ___ Va. ___, ___, ___ S.E.2d ___, ___, 2015 Va. LEXIS 140 (Va. Oct. 29, 2015) ("Code § 65.2-502 presumes that where an injured worker is only partially disabled, that employee can continue working either on restricted duty or in an altogether new job. As a result, economic loss is the appropriate test for the compensation award in cases of partial incapacity whereas loss of earning capacity is the proper test for such awards in cases of total incapacity.").

the general rule, Larson recognizes that it is simple to state, but difficult to implement, noting that "whether this formula can be applied with any precision may be open to question." Id.

Our cases demonstrate this difficulty. In Metro Mach. Corp. v. Lamb, 33 Va. App. 187, 532 S.E.2d 337 (2000), a claimant who was under medical restrictions caused by a prior, compensable accident, sought wage benefits when he, along with other employees, was laid off "from selective employment, due to the employer's loss of Navy ship repair work" and resultant "plant shut down . . . ." Id. at 196, 532 S.E.2d at 341. We affirmed the Commission's award of benefits. Reasoning that "[u]ntil the employee can perform at his pre-injury capacity, he is protected from the economic vicissitudes of the market place . . . ," we concluded that an "employee's layoff due to the employer's economic downturn does not preclude his entitlement to disability benefits." Id. at 197, 532 S.E.2d at 341.

We returned to the issue in Utility Trailer Mfg. Co. v. Testerman, 58 Va. App. 474, 711 S.E.2d 232 (2011). In Utility Trailer, the claimant had been involved in a compensable accident working on a manufacturing line in 2006 and had returned to work for the employer on the manufacturing line in a light-duty capacity. In 2009, in order to perform an inventory, employer furloughed all employees, including the claimant, for four days. The claimant sought wage benefits for the four days of work he missed as a result of the furlough. Id. at 475-76, 711 S.E.2d at 232-33. The employer argued that the claimant was not entitled to benefits because any wages lost during the furlough were not caused by his partial disability, but rather such loss was caused by the furlough of all of the manufacturing line employees. A divided Commission found for the claimant and awarded benefits.

We reversed. While acknowledging that a claimant limited to light-duty status could be entitled to benefits under such scenarios, we held that he must establish that his partial disability placed him at a disadvantage when compared to non-restricted workers and show that there was

- 14 -

a "causal relationship between his loss of wages and his injury." Id. at 482, 711 S.E.2d at 236. Finding that the claimant had failed to meet these requirements, we reversed the Commission's award of benefits.

Arguably there is tension between our opinion in Lamb and Utility Trailer;[10] however, in Carr, 63 Va. App. at 285-86, 756 S.E.2d at 192-93, we cited both with approval, effectively concluding that they could be reconciled, and set forth a framework for determining whether a partially disabled claimant remains entitled to benefits after a furlough.

Specifically, we reiterated the established principle that a partially disabled claimant seeking disability benefits in this scenario has the burden of demonstrating that "the wage loss is causally related to the partial incapacity." Carr, 63 Va. App. at 286, 756 S.E.2d at 193. See also Pocahontas Fuel Co. v. Agee, 201 Va. 678, 681, 112 S.E.2d 835, 837 (1960) (holding that granting total disability benefits to a worker who has been laid off is "warranted if the Commission could reasonably find . . . that *because of his disability* he was unable to market his remaining capacity for work" (emphasis added)); Pocahontas Fuel Co. v. Barbour, 201 Va. 682, 684, 112 S.E.2d 904, 906 (1960) (stating that "[o]ne who has suffered a partial physical disability may obtain total incapacity payments if, *because of his disability*, he is unable to market his remaining capacity for work" (emphasis added)).

To analyze whether a particular wage loss in this scenario was due to the claimant's partial incapacity, we adopted the five considerations utilized in Utility Trailer, namely

> (1) the length of any furlough from work; (2) whether that furlough
> included *all* employees, restricted or not, of the same class; (3) the

---

[10] A member of the panel in Utility Trailer dissented, 58 Va. App. at 484, 711 S.E.2d at 236, later writing that the decision in Utility Trailer "cannot be reconciled with our previous holding in . . . Lamb . . . ." Carr, 63 Va. App. at 287, 756 S.E.2d at 194 (Petty, J. concurring in the judgment). Subsequent to Carr, we expressly recognized that Carr harmonized the decisions in Utility Trailer and Lamb. McKellar v. Northrop Grumman Shipbuilding Inc., 63 Va. App. 448, 455 n.3, 758 S.E.2d 104, 107 n.3 (2014), rev'd on other grounds, ___ Va. at ___, ___ S.E.2d at ___, 2015 Va. LEXIS 140.

reason for the furlough; (4) whether the term of the furlough was pre-determined by the employer; and (5) whether employees were offered employment at the termination of the furlough.

Carr, 63 Va. App. at 286, 756 S.E.2d at 193 (citation omitted).

By its express terms, Utility Trailer "addresses only those cases where a partially incapacitated employee is *furloughed*." 58 Va. App. at 483, 711 S.E.2d at 236. In context, however, furlough refers to a loss of employment that affects a class of employees as opposed to an individual, and therefore, the rationale also applies in cases of a permanent elimination of positions. To hold otherwise would eliminate the requirement that a claimant demonstrate that partial disability caused an economic loss, place a partially disabled claimant in a superior position to the able-bodied workers who also were laid off, and essentially convert workers' compensation benefits into unemployment benefits, which we cannot do. See Jwayyed, 218 Va. at 1032, 243 S.E.2d at 231; Agee, 201 Va. at 681, 112 S.E.2d at 837; Barbour, 201 Va. at 684, 112 S.E.2d at 906. Accordingly, we apply the Utility Trailer considerations to the case before us.

Here, the length of the layoff was definite; employer had eliminated permanently the custodial positions, and thus, claimant's potential marketing activities were not affected by her possible recall to work, distinguishing her from the claimant in Carr. All of the custodial positions were terminated with all employees of claimant's class losing their jobs regardless of whether or not they were subject to injury related restrictions.

The layoff was the result of a business decision made by the employer. Although we can presume that it was done for economic benefit, there is nothing in the record to support a conclusion that the decision was made as a result of a general economic downturn. Because

employer intended to eliminate the custodial positions permanently, the layoff and its length were predetermined.[11]

Finally, no employees, whether subject to medical restrictions or not, were offered custodial positions with employer going forward. Although claimant's counsel stated at the beginning of the January 7th hearing that all of the custodians except for claimant were hired by Jani-King, this is not supported by the record.[12] Rather, the record reveals that only one of employer's former custodians eventually was hired by Jani-King, but that occurred a year after Jani-King had undertaken providing the custodial services. Notably, claimant never applied for a position with Jani-King.

Our review of these considerations strongly suggests that claimant's partial disability was not the cause of her wage loss, but the considerations are not necessarily dispositive. Claimant would be entitled to disability benefits if the evidence demonstrated that she was denied employment because of her partial incapacity.

The Commission, citing Utility Trailer, found that "[w]ages were lost and there was a causal connection between the wage loss and the claimant's injuries." The Commission, however, cited no evidence to support its conclusion. Our review of the record reveals that it is devoid of such evidence.

Although there is evidence that claimant unsuccessfully sought employment with numerous potential employers after being laid off by employer, there is no evidence that she was

---

[11] The record establishes that the decision to terminate the custodial positions was reached prior to claimant's work accident. Accordingly, we are not faced with a scenario in which an employer seeks to avoid paying disability benefits by terminating a class of workers that includes a worker or workers receiving benefits.

[12] Absent an agreement of the parties by way of a stipulation, statements of counsel are not evidence. Bateman v. Commonwealth, 183 Va. 253, 256-57, 32 S.E.2d 134, 136 (1944); Goin v. Commonwealth, 182 Va. 307, 310, 28 S.E.2d 631, 632 (1944).

unsuccessful *because of* her partial disability. Claimant's testimony established that she applied for jobs at various employers; however, there was no evidence that she was not hired *because of her partial disability*, a showing that is essential to her claim. Agee, 201 Va. at 681, 112 S.E.2d at 837-38; Barbour, 201 Va. at 684-85, 112 S.E.2d at 906-07. In fact, there is no evidence that the prospective employers were even aware that claimant was under any medical restrictions. See Agee, 201 Va. at 681, 112 S.E.2d at 838 ("[T]he evidence shows that when [the claimant] was laid off and applied at other mines operated by the company, neither he nor the company knew that he had silicosis. Employment was denied him in each instance, not because of his disease but because he was not on the panel at those mines."). Thus, the evidence does not establish that claimant's failure to obtain new employment was related to her disability.

It is noteworthy that claimant never even applied for a position with Jani-King. Based on her own testimony, claimant essentially was performing all of the duties of a non-restricted custodian at the time Jani-King assumed the contract for providing custodial services.[13] Claimant's failure to apply leaves open the question of whether she essentially could have continued to provide the same custodial services she had previously provided, albeit as an employee of Jani-King.

It appears that the Commission simply assumed that a failure to find work when partially disabled is enough to establish a causal relationship. It is not. As the Supreme Court of Virginia has held regarding a partially disabled claimant with a disability rating of up to 50%, "[n]o

---

[13] Absent the stipulation that she was in a light-duty capacity at the relevant time, there would be considerable question as to whether claimant was even partially disabled at the time Jani-King began providing the custodial services. Citing both the medical evidence and claimant's testimony, the deputy commissioner found that "considering the record as a whole, we find the claimant was released to preinjury work." The stipulation, however, allowed the Commission to conclude that claimant was, in fact, partially disabled.

- 18 -

inference is warranted from the degree of partial physical incapacity of [the claimant] that he could not obtain other employment, and the evidence is insufficient to show that he made reasonable effort to obtain other employment *which was denied to him because of his partial physical incapacity*." Id. (emphasis added).

Accordingly, because claimant failed to establish that her failure to find employment after she was laid off was causally related to her partial disability, we reverse the Commission's award of disability benefits.

CONCLUSION

For the foregoing reasons, we affirm the Commission's factual determinations challenged in employer's first four assignments of error. However, we find that the record does not support the conclusion that claimant's inability to obtain employment after being laid off was causally related to her partial disability, and therefore, we reverse the Commission's award of disability benefits.

Affirmed in part and
reversed in part.