Petty, J.,
with whom Humphreys, J., joins, dissenting.
The Workers’ Compensation Act provides that when an employee is injured on the job and his capacity to work is reduced, he is protected from the economic vicissitudes of the market place until the employee can perform at his pre-injury capacity. Metro Mach. Corp. v. Lamb, 33 Va.App. 187, 197, 532 S.E.2d 337, 341 (2000). At least, that was the law until today. Today, based primarily on the Supreme Court’s brief mention of Code § 65.2-502 in McKellar v. Northrop Grumman Shipbuilding, Inc., 290 Va. 349, 777 S.E.2d 857 (2015), the majority overrules an entire line of cases. Today, the majority rejects decades of established precedent by concluding that a partial *554 ly-disabled employee who is laid off from light-duty employment provided by her employer is eligible for benefits only if: (1) the layoff from light duty was related to her injury and (2) in establishing that she adequately marketed her residual work capacity, she provides evidence that her failure to procure other employment was specifically because of her disability. Because neither the plain language of the Act nor the holding of McKellar mandates this radical departure from the prior decisions of this Court and the Supreme Court, I respectfully dissent.
Background
Although the factual and procedural posture of this case as presented to the panel was somewhat complex and convoluted, I agree with the majority that we must defer at this juncture to the findings of the Commission and to the holdings of the panel that are not before this Court for en banc reconsideration. Succinctly put, Linda Jones was employed as a custodian by King William County. During the course of her employment, she fell and injured her shoulder. Because of her partial disability, she was unable to return to her original job. The County provided her with a light-duty job within her residual capacity at her previous wage level and, as required by Code § 65.2-510, she accepted that employment. Accordingly, the County was not required to pay workers’ compensation. Two months later, the County implemented a previous decision to outsource Jones’s light-duty job, and she was laid off. The County did not provide an alternative light-duty job. Although Jones sought employment elsewhere, she was unable to find a job within her restricted work capacity. She then sought workers’ compensation benefits. The Commission concluded that Jones was partially disabled, that she had been laid off from the light-duty job the County had provided, and, significantly, that she had reasonably, albeit unsuccessfully, marketed her residual work capacity.[19]
*555 A. The Unambiguous Requirements of Code § 65.2-502
I begin with my disagreement with the majority’s holding that an employer can be relieved of its obligation to compensate a partially-disabled employee if the “claimant’s [light-duty] employment with employer comes to an end because her position is eliminated along with the positions of her able-bodied colleagues.” The General Assembly’s provision for partially-disabled employees simply provides no basis for the majority’s holding.
The starting point of any analysis should be the relevant statute. Since the majority did not include the statute in its analysis, I provide it here. Code § 65.2-502 provides in relevant part:
[Wjhen the incapacity for work resulting from the injury is partial, the employer shall pay, or cause to be paid, as hereinafter provided, to the injured employee during such incapacity a weekly compensation equal to 66 ¾ percent of the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter, but not more than 100 percent of the *556 average weekly wage of the Commonwealth as defined in § 65.2-500.
(Emphasis added).
The primary rule of statutory construction requires this Court to “give effect to the legislature’s intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity.” McKellar, 290 Va. at 354, 777 S.E.2d at 860. “When the language of a statute is unambiguous, we are bound by the plain meaning of that language.” Id. (quoting Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007)). And, “[this Court] must assume that ‘the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute.’ ” Rasmussen v. Commonwealth, 31 Va.App. 233, 238, 522 S.E.2d 401, 403 (1999) (quoting Frazier v. Dep’t of Soc. Servs., Div. of Child Support Enforcement ex rel. Sandridge, 27 Va.App. 131, 135, 497 S.E.2d 879, 881 (1998)).
In clear and unambiguous language, Code § 65.2-502 provides three requirements regarding the payment of compensation to a partially-disabled worker. First, the employer must compensate an employee for his “incapacity for work resulting from [his] injury,” Code § 65.2-502(A) (emphasis added), not for his lost job. The Supreme Court has explicitly stated that “[b]enefits awarded under [the predecessor to Code § 65.2-502] cover losses occasioned by the impairment of the claimant’s earning capacity.” J.A. Foust Coal Co. v. Messer, 195 Va. 762, 766, 80 S.E.2d 533, 535 (1954) (emphasis added, alterations modified); see Smith v. Smith, 32 Va.App. 242, 249-50, 527 S.E.2d 463, 467 (2000) (“Benefits are for loss of earning power and are ‘not necessarily proportional to the bodily functional disability.’ ” (quoting Foust, 195 Va. at 765-66, 80 S.E.2d at 535)). Secondly, Code § 65.2-502 sets out the formula for calculating the amount of compensation. An employee is entitled to two thirds of the difference between his pre-injury average weekly wage and “the average weekly wage which he is able to earn thereafter.” Code § 65.2-502. Finally, it designates the length of time during which a worker *557 is entitled to the compensation. The compensation must be paid “during such incapacity.” Id. (emphasis added).
The Act recognizes that although a partially incapacitated employee is unable to perform his or her pre-injury job, the employee may be able to perform some other light-duty job. Thus, “[i]n lieu of [compensation] ..., the employer may provide his employee with selective employment — that is, a job the employee can perform even though partially disabled, at wages equal to his previous wage.” Util. Trailer v. Testerman, 58 Va.App. 474, 485-86, 711 S.E.2d 232, 237 (2011) (Petty, J. dissenting). Significantly, “[i]n such a case, the employee is not entitled to compensation — not because he is no longer suffering a disability, but because the difference between his pre-injury wages and the amount he is able to earn subsequent to the injury is zero.” Id. at 486, 711 S.E.2d at 237. Finally, in the event the employer provides such selective, light-duty employment, the employee is required to accept the offer or suffer termination of compensation. Code § 65.2-510.
Despite the Act’s plain language, the majority concludes that an employer can avoid paying compensation by engaging in the very bait-and-switch shenanigans this Court has rejected. See Scott v. Scott, 16 Va.App. 815, 819, 433 S.E.2d 259, 262 (1993) (“[The Act] prevents] employers from lulling partially disabled workers into a false sense of security ... by providing employees light duty work at their pre-injury wage for two years and then terminating the employee without liability for future disability benefits.”). It is undeniable that the County could not have avoided paying compensation by eliminating, for economic reasons, Jones’s original job after she was injured. But, under the majority’s reasoning, it can accomplish the same result by providing a light-duty job to Jones, a job she is required by statute to accept, and then eliminating that job two months later. Even more troubling is the majority’s seeming approval of the action because “the record establishes that the decision to terminate the custodial positions [which Jones was performing as light-duty] was reached prior to claimant’s work accident.” The majority thus establishes that an employer who places an injured employee in a light-duty *558 position it has already planned to eliminate can avoid its compensation obligations by subsequently laying off that employee. I simply think that such a view renders toothless the employee’s protections under Code § 65.2-502.
I believe that a correct interpretation of Code § 65.2-502 would conclude that Jones suffered an “incapacity for work resulting from [her] injury,” Code § 65.2-502, resulting in “impairment of [her] earning capacity,” Foust, 195 Va. at 766, 80 S.E.2d at 535, for which she was entitled to compensation “during such incapacity,” Code § 65.2-502. Because she cannot find employment, she is entitled to total incapacity payments. See Big D Quality Homebuilders v. Hamilton, 228 Va. 378, 382, 322 S.E.2d 839, 841 (1984) (“The Commission may properly find that an employee’s wage loss may be total because of partial physical incapacity.”). It is illogical to suggest, as the majority does, that “such a result leads to anomalous results in that it would place injured employees in a superior position to their able-bodied colleagues and effectively eliminate the requirement that the partially disabled worker demonstrate a causal relationship between her injury and the claimed economic loss.” On the contrary, the “layoff placed [Jones] in a different position from the other, uninjured, employees. [Her] ‘opportunity to engage in work’ was limited by [her] permanent physical restriction due to [her] compensable injury. Thus, [s]he did not have the same opportunity or ability as other employees to find other employment.” Metro Mach. Corp. v. Sowers, 33 Va.App. 197, 209, 532 S.E.2d 341, 347 (2000). The Commission’s finding that she made reasonable efforts to find other employment within her work capacity but was unable to do so is proof of this fact.
B. McKjsllar Does Not Require a Different Analysis
The majority reasons that the Supreme Court’s use of the terms “earning capacity” and “economic loss” to distinguish compensation under Code § 65.2-500 and Code § 65.2-502 respectively is “more than mere semantics” — suggesting one statute is capable of “a high level of abstraction” and the other is “far more granular.” The majority therefore felt compelled *559 to overrule opinions from this Court because they did not use the specific term “economic loss.”[20] See supra at 546, 789 S.E.2d at 141 (“In McKellar, the Supreme Court made clear that [the analysis used in those cases] is the incorrect analysis because ‘economic loss is the appropriate test for the compensation award in cases of partial incapacity.’ ” (quoting McKellar, 290 Va. at 357, 777 S.E.2d at 861)). However, I believe the Supreme Court simply recognized in McKellar that the respective statutes require different calculations.
That the term “economic loss” refers to the calculation of benefits and not entitlement to benefits is clear from the Supreme Court’s analysis in Newton v. Fairfax County Police Department, 259 Va. 801, 529 S.E.2d 794 (2000). In that case, the Supreme Court expressly agreed with this Court’s reliance on Arlington County Fire Department v. Stebbins, 21 Va.App. 570, 573, 466 S.E.2d 124, 126 (1996). See Newton, 259 Va. at 804, 529 S.E.2d at 796 (holding “there was no economic loss” where claimant had no wages in the preceding year). In Stebbins, this Court concluded that “[t]he reason for calculating the average weekly wage is to approximate the economic *560 loss suffered by an employee or his beneficiaries when there is a loss of earning capacity because of work-related injury or death.” Stebbins, 21 Va.App. at 573, 466 S.E.2d at 126 (emphasis added) (quoting Bosworth v. 7-Up Distrib. Co., 4 Va.App. 161, 163, 355 S.E.2d 339, 340 (1987)); see also Smith, 32 Va.App. at 249, 527 S.E.2d at 467 (“The reason for calculating the average weekly wage is to approximate the economic loss suffered by an employee ... when there is a loss of earning capacity because of work-related injury.”[21] (alteration in original) (quoting Bosworth, 4 Va.App. at 163, 355 S.E.2d at 340)).
Clearly, “[ujsage of these terms [loss of earning capacity and economic loss] is hardly uniform; over many decades the Court of Appeals and [the Supreme] Court have used both these terms with regard to total disability.” McKellar, 290 Va. at 360 n.1, 777 S.E.2d at 863 n.1 (McClanahan, J., concurring). Simply put, the two terms are often used interchangeably. Therefore, like Justice McClanahan, “I query the foundation for the majority’s reliance upon a rigid dichotomy that loss of earning capacity applies to total disability while economic loss applies to partial disability.” Id. Instead, I believe the focus must remain on the unambiguous language of Code § 65.2-502 requiring that employers compensate an employee for “the incapacity for work resulting from the injury ... during such incapacity” in an amount equal to a percentage “of the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter,” irrespective of the employer’s economic concerns.
*561 I am confident the Supreme Court intended its McKellar analysis to be an explanation of the calculation of benefits, rather than a basis for the majority’s new requirement that a partially-disabled worker prove the reason for her post-injury wage loss.[22]
Further, I am confident the Supreme Court could not have intended “economic loss” to be a new “test” for benefits as the majority suggests. Although the Court stated that “economic loss is the appropriate test for the compensation award in cases of partial incapacity,” it did not define an “economic loss test,” neither did it point to any of its precedent defining the term. Indeed, McKellar appears to be the only Supreme Court case referring to economic loss as a “test.” If the Court had *562 intended that this Court apply a rigid dichotomy between Code § 65.2-500 and Code § 65.2-502, which are identical in their language regarding award and differ only in calculation, surely the Court would have clarified the distinguishing features between the two “tests.” Knowing that the terms “economic loss” and “loss of earning capacity” have been used interchangeably in Virginia appellate courts for decades, McKellar, 290 Va. at 360 n.1, 777 S.E.2d at 863 n.1 (McClana-han, J., concurring), then surely the Court would have established criteria for a new “economic loss test.”[23] Of course, it had no reason to do so since partial disability was not the issue being addressed in McKellar.
C. The Majority’s New Requirement For Marketing Residual Work Capacity
Recognizing the distinction between a totally disabled employee and one who has the ability to perform some work, Code § 65.2-510 permits an employer to offer the partially disabled employee a light-duty job “suitable to his capacity.” If the employee unjustifiably refuses this light-duty employment, the employer is no longer required to pay benefits. On the other hand, as the majority notes, if “the employer offers no selective employment consistent with the claimant’s restrictions, a claimant has produced some evidence that she has suffered an economic loss as a result of her injury — but for her work-related injury, she would still be in her pre-injury position”; but the employee “would still be under an obligation to market within her restrictions.”
It is well established that in a claim for partial disability, “the employee ‘[has] the burden of proving that he [has] made a reasonable effort to procure suitable work but [is] unable to *563 market his remaining work capacity.’ ” Ford Motor Co. v. Favinger, 275 Va. 83, 89, 654 S.E.2d 575, 578 (2008) (quoting Wash. Metro. Area Transit Auth. v. Harrison, 228 Va. 598, 601, 324 S.E.2d 654, 656 (1985)). But never, until now, has a disabled employee additionally been required to prove that her marketing was unsuccessful because she is disabled. Rather, the Supreme Court has consistently focused on the claimant’s good faith, albeit unsuccessful, efforts to market remaining work capacity. See id. at 90, 654 S.E.2d at 579 (establishing criteria for what constitutes reasonable efforts to market remaining work capacity).
The majority believes that Pocahontas Fuel Co. v. Agee, 201 Va. 678, 112 S.E.2d 835 (1960), and Pocahontas Fuel Co. v. Barbour, 201 Va. 682, 112 S.E.2d 904 (1960), require the claimant to prove that her failure to find light-duty employment was a result of her disability. The Supreme Court has never interpreted these cases in this fashion. Rather, the Supreme Court explained that its decisions in Agee and Barbour were predicated on the fact that the claimants “had failed to show that they could not perform any work or that they had made reasonable efforts to obtain other employment.” Hamilton, 228 Va. at 382, 322 S.E.2d at 841.
In contrast, the Hamilton Court “approve[d] the ruling of the Commission that, having secured selective employment without assistance from the employer, Hamilton is entitled to compensation for total loss of earnings during his period of temporary unemployment.” Id. (emphasis added). In Hamilton, the “employer argue[d] that the burden of proof was on Hamilton to show that he had suffered a change in condition directly caused by his industrial accident.” Id. at 381, 322 S.E.2d at 840-41. The claimant had found light-duty employment with another employer but subsequently had been fired because of a dispute with that employer. Id. at 380, 322 S.E.2d at 839. Nonetheless, the Court held that because employer was not providing claimant with a light-duty job, it was required to pay compensation when claimant was unemployed. Id. at 382, 322 S.E.2d at 841. I simply see no principled reason why a claimant fired from a light-duty job for reasons other *564 than his disability, as in Hamilton, is entitled to compensation, but an employee laid off from the light-duty job provided by her employer, as here, is not entitled to compensation.
More recently, the Supreme Court reaffirmed its prior understanding of the holdings in Agee and Barbour.
See Pocahontas Fuel Co. v. Agee, 201 Va. 678, 681, 112 S.E.2d 835, 838 (1960) (employee was not entitled to benefits because he “never applied for work elsewhere either before or after he learned that he had silicosis, and there [was] no proof that he could not have marketed his remaining capacity for work”); Pocahontas Fuel Co. v. Barbour, 201 Va. 682, 684, 112 S.E.2d 904, 906 (1960) (reversing Commission’s award of benefits because there was no proof either that the employee made “a reasonable effort to procure work” or that he was unable to market his residual capacity[.]
Favinger, 275 Va. at 91, 654 S.E.2d at 579-80 (first alteration in original). The Supreme Court has consistently required the claimant to prove a reasonable effort to market residual work capacity, not to prove why her reasonable efforts were unsuccessful.
“The determination as to whether an employee seeking temporary partial disability benefits has made a reasonable effort to market his residual work capacity falls within the Commission’s fact-finding, and if the Commission’s factual conclusion on that question is supported by credible evidence, it will not be disturbed on appeal.” Id. at 88, 654 S.E.2d at 578. The Supreme Court reasoned in Favinger that “[t]here are no fixed guidelines for determining what constitutes a ‘reasonable effort’ by an employee to market residual work capacity.” Id. at 89, 654 S.E.2d at 579. The Court gave several criteria for evaluating whether the employee “exereise[d] reasonable diligence” in searching for employment:
“(1) the nature and extent of [the] employee’s disability; (2) the employee’s training, age, experience, and education; (3) the nature and extent of [the] employee’s job search; (4) the employee’s intent in conducting his job search; (5) the availability of jobs in the area suitable for the employee, *565 considering his disability; and (6) any other matter affecting [the] employee’s capacity to find suitable employment.”
Id. at 90, 654 S.E.2d at 579 (alterations in original) (quoting Nat’l Linen Serv. v. McGuinn, 8 Va.App. 267, 272, 380 S.E.2d 31, 34 (1989)). “In sum, an employee ‘must present “some evidence that he [has] engaged in a good faith effort to obtain work within the tolerance of his physical condition” and has failed to find a job, either due to his injury or because no such work was available in the community.’ ” Id. (alteration in original, emphasis added) (quoting Nat’l Linen Serv., 8 Va.App. at 271, 380 S.E.2d at 34).
Here, the employer terminated Jones’s light-duty position. The employer could have offered Jones a different light-duty position and thereby meet its compensation obligation. It chose not to do so. It was consequently obligated to pay Jones for her partial disability. Jones was required only to seek “employment suitable to [her] capacity.” Code § 65.2-510(A); see Dowden v. Hercules, Inc., 51 Va.App. 185, 199, 655 S.E.2d 755, 762 (2008) (en banc) (Kelsey, J., concurring) (“A mechanic with a hand injury, therefore, does not breach his mitigation duty by refusing a job that requires full use of both hands. ... The surgeon’s job is not ‘suitable’ for a mechanic, and thus, Code § 65.2-510(A) would place no duty on the mechanic to take a job he obviously cannot perform.”). The Commission found as fact that Jones did exactly that — she adequately marketed her residual work capacity, but no work was available for her in the community.[24] By law, she was thus entitled to benefits.
Nevertheless, the majority augments the criteria given by the Supreme Court in Favinger with a new requirement — that Jones prove that the reason she cannot successfully market her residual work capacity is because she is partially disabled. *566 Never before has such a heavy burden been placed on injured workers; and it is a burden wholly inconsistent with the General Assembly’s statutory framework and this Court’s prior precedent.
Conclusion
Code § 65.2-502 requires that an employer compensate a partially disabled employee for her “incapacity for work resulting from the injury.” Nevertheless, the majority today overrules the prior opinions from this Court that “evaluated partial disability claims using a loss of earning capacity analysis.” [25] The majority does so because it concludes such analysis “eliminated the requirement that a claimant demonstrate that partial disability caused an economic loss, placets] a partially disabled claimant in a superior position to the able- *567 bodied workers who also were laid off, and essentially con-vertís] workers’ compensation benefits into unemployment benefits, which we cannot do,” citing Vega Precision Labs., Inc. v. Jwayyed, 218 Va. 1026, 1032, 243 S.E.2d 228, 231 (1978).[26] The majority’s reasoning seems to be driven by these concerns rather than an analysis of the actual statute to discern the intent of the legislature.[27] I believe that the
public policy of the Commonwealth is determined by the General Assembly, for “it is the responsibility of the legislature, not the judiciary, ... to strike the appropriate balance between competing interests. ... Once the legislature has acted, the role of the judiciary is the narrow one of determining what [it] meant by the words it used in the statute.”
Uniwest Constr. v. Amtech Elevator Servs., 280 Va. 428, 440-41, 699 S.E.2d 223, 229 (2010) (alterations in original) (quoting Dionne v. Se. Foam Converting & Packaging, Inc., 240 Va. 297, 304, 397 S.E.2d 110, 114 (1990)). “This principle is a valuable guard against unwarranted judicial activism. It is by no means new and is deeply embedded in our jurisprudence.” Harward v. Commonwealth, 229 Va. 363, 368, 330 S.E.2d 89, 92 (1985) (Russell, J., dissenting).
I believe the legislature’s clear policy choice is to compensate an employee for “incapacity for work resulting from [a compensable] injury ... during such incapacity.” Code § 65.2- *568 502. The General Assembly balanced the rights and remedies granted to an employee under the Act with the fact that the Act excludes all other rights and remedies an employee might have. Code § 65.2-307; David White Crane Serv. v. Howell, 282 Va. 323, 327, 714 S.E.2d 572, 575 (2011). The General Assembly carefully weighed competing interests and struck the appropriate balance between employers, employees, and society-at-large. Even if application of Code § 65.2-502’s plain language were to put “a partially disabled claimant in a superior position to the able-bodied workers who also were laid off,” as the majority fears, such an outcome is for the General Assembly to balance against other competing interests. I would leave determinations of what is “impermissible and anomalous” to the legislature.
Jones indisputably suffered an “incapacity for work resulting from [her] injury,” for which she was entitled to compensation “during such incapacity,” upon the Commission’s finding of fact that she had reasonably marketed her residual work capacity. Jones has done everything the Act requires; she is entitled to compensation. And I am additionally reminded that “should doubt remain [as to her right to compensation], [Jones] is entitled to the benefit of the doubt. The provisions of the Workers’ Compensation Act ‘should be liberally construed to carry out [its] humane and beneficial purposes.’” Dinwiddie Cty Sch. Bd. v. Cole, 258 Va. 430, 436-37, 520 S.E.2d 650, 653 (1999) (last alteration in original) (quoting Baggett Transp. Co. v. Dillon, 219 Va. 633, 637, 248 S.E.2d 819, 822 (1978)). I would affirm the Commission’s award.

. The Commission found that Jones had reasonably marketed her residual work capacity. King William County v. Jones, 65 Va.App. 536, *555 543, 779 S.E.2d 213, 217 (2015). Although King William County assigned error to this factual determination, the panel declined to address it in light of its decision to reverse on other grounds. Id. at 554 n.2, 779 S.E.2d at 217 n.2. The County did.not request en banc review of the panel’s decision on this assignment of error. Thus, the Commission’s finding on this issue is final and constitutes the law of the case. See Kondaurov v. Kerdasha, 271 Va. 646, 658, 629 S.E.2d 181, 188 (2006) ("Under [the] law of the case doctrine, a legal decision made at one [stage] of the litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.” (alterations in original) (quoting Va. Vermiculite, Ltd. v. W.R. Grace & Co.-Conn., 108 F.Supp.2d 549, 609 (W.D. Va. 2000))).

. Regardless of the terms used, the cases overruled by the majority today held true to the analysis required by the plain language of Code § 65.2-502. See Metro Mach. Corp. v. Sowers, 33 Va.App. 197, 208, 532 S.E.2d 341, 347 (2000) (focusing on Code § 65.2-502's requirement that claimant receive “the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter,” and rejecting employer's argument that claimant was not entitled to disability benefits because the layoff was plant-wide and economic in nature); Metro Mach. Corp. v. Lamb, 33 Va.App. 187, 196-97, 532 S.E.2d 337, 341 (2000) (“The employer's reasons for the layoff should not diminish the employee’s entitlement to benefits. ... Until the employee can perform at his pre-injury capacity, he is protected from the economic vicissitudes of the market place.”); Carr v. Va. Elec. & Power Co., 25 Va.App. 306, 311, 487 S.E.2d 878, 881 (1997) (holding that "[a]s in {Graham}, ... claimant suffered a wage loss at the light-duty position that he would not have incurred at his pre-injury placement" and was thus entitled to compensation); Consol. Stores Corp. v. Graham, 25 Va.App. 133, 136-37, 486 S.E.2d 576, 578 (1997) ("During a period of partial incapacity, a claimant performing work remains entitled to compensation benefits ... [and] the employer's financial condition and the availability of alternative work do not affect the claimant’s right to compensation due to an impaired capacity to perform his pre-injury duties.”).

. Importantly, Smith recognized that the relevant "economic loss” was the incapacity suffered by the employee because of the "work-related injury,” Smith, 32 Va.App. at 249, 527 S.E.2d at 267, and not because the employee subsequently could not find alternative work. The majority conflates the two. Based on McKellar, the majority concludes that requiring a claimant to prove the reason for her subsequent inability to find employment "comports with the basic notion that '[a] claimant still has the burden of proving [her] entitlement to benefits ...,'” quoting Ford Motor Co. v. Favinger, 275 Va. 83, 89, 654 S.E.2d 575, 578 (2008). I do not believe McKellar requires this additional burden.

. I note that Justice McClanahan recognized that the plain language of Code § 65.2-500 governed the analysis in McKellar. McKellar, 290 Va. at 360, 777 S.E.2d at 863 (McClanahan, J., concurring). Thus, any discussion of partial incapacity was not essential to the disposition in the case; it was non-binding dicta. The Supreme Court could not have intended that its dicta would be the basis for this Court’s overhaul of its stare decisis. “Stare decisis cannot be properly applied without ‘the need to distinguish an opinion's holding from its dicta.' ” Newman v. Newman, 42 Va.App. 557, 565, 593 S.E.2d 533 (2004) (en banc) (quoting United States Nat’l Bank of Ore. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 463 n. 11, 113 S.Ct. 2173, 2186 n. 11, 124 L.Ed.2d 402 (2001)). “Dicta in a prior decision generally refers to that portion of an opinion 'not essential’ to the disposition in the case.” Id. Simply put, “[djicta cannot 'serve as a source of binding authority in American jurisprudence.’ ” Id. at 566, 593 S.E.2d at 538 (quoting United States v. Pasquantino, 336 F.3d 321, 329 (4th Cir. 2003) (en banc)). I note the Supreme Court’s admonition;
It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which these expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in the subsequent suit when the very point is involved for decision. The reason of this maxim is obvious. The question before the court is investigated with care and considered in its full extent. Other principles which may serve to illustrate it are considered in their relation to the case outside, but their possible bearing on the very case is seldom completely investigated.
Va. Ry. & Power Co. v. Dressler, 132 Va. 342, 350-51, 111 S.E. 243, 245-46 (1922) (quoting Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 399, 5 L.Ed. 257 (1821)). Thus, although the Supreme Court’s McKellar dicta may be instructive, I believe it "ought not to control the judgment in [this] subsequent suit.” Id. at 351, 111 S.E. at 246.

. See, for example, the Supreme Court’s analysis and criteria in National Linen Serv. v. McGuinn, 8 Va.App. 267, 272, 380 S.E.2d 31, 34 (1989), when it first established factors to determine “whether a partially disabled employee has made reasonable effort to find suitable employment commensurate with his abilities,” and the Court’s subsequent reiteration of those criteria in Favinger, 275 Va. at 89-90, 654 S.E.2d at 578. Similar analysis, criteria, and citation are completely missing from the Court’s McKellar reference to an “economic loss test.”

. The majority maintains that "nothing in [its] opinion today requires any changes in the way partially disabled claimants market their residual capacity.” In light of the Commission’s factual finding, the only conclusion I can draw is that the majority has imposed an additional burden of proof on the claimant that the Commission failed to consider.

. I note that having overruled this Court’s prior opinions that dealt specifically with laid-off light-duty employees, the majority adopts and applies Utility Trailer, which by the majority’s own admission "addresses only those cases where a partially incapacitated employee is furloughed." See Carr v. Atkinson/Clark/Shea, A Joint Venture, 63 Va.App. 281, 286, 756 S.E.2d 191, 193 (2014) (rejecting the narrow exception in Utility Trailer, which "by its plain terms represents a decision that is 'limited in scope' and 'addresses only those cases where a partially incapacitated employee is furloughed’ " and instead applying the general rule that when furloughs are “attributable to the ‘vicissitudes of the market place,’ " Lamb, 33 Va.App. at 197, 532 S.E.2d at 341, “the employer’s financial condition and the availability of alternative work do not affect the claimant's right to compensation due to an impaired capacity to perform his pre-injury duties,” Graham, 25 Va.App. at 137, 486 S.E.2d at 578). Significantly, the Supreme Court’s only reference to Utility Trailer is its observation in McKellar that Utility Trailer’s "narrow focus” made it applicable to partially disabled, furloughed employees only and that this Court had improperly relied upon it. McKellar, 290 Va. at 358, 777 S.E.2d at 862. The majority expands Utility Trailer's "narrow focus” by redefining a furlough to include permanent layoffs. Frankly, I am at a loss to understand how the County’s decision to permanently outsource Jones’s job could possibly be considered a furlough. The plain meaning of the term "furlough” connotes a temporary absence. See Furlough, Black’s Law Dictionary (10th ed. 2014) (defining "furlough” as "1. A leave of absence from military or other employment duty. 2. A brief release from prison.”). I am sure the warden who released an inmate for a Christmas furlough would be quite surprised to learn he shouldn’t expect the inmate’s return after the holiday.

. I agree with the majority that workers' compensation is not a substitute for unemployment insurance and is not available when, as in Jwayyed, the claimant is "found medically fit to return to his pre-injury employment” but that job is no longer available. Jwayyed, 218 Va. at 1032, 243 S.E.2d at 231. Certainly, if an employee is no longer disabled, he is no longer entitled to compensation under the Act. But that is not the case here; Jones is still partially disabled and Code § 65.2-502 requires that she be compensated under the Act during the period of incapacity.

. See supra at 548, 789 S.E.2d at 141 (adopting reasoning to avoid "impermissible and anomalous results”); supra at 548, 789 S.E.2d at 142 (seeking to avoid "anomalous results” that would "place injured employees in superior position to their able-bodied colleagues”); supra at 552, 789 S.E.2d at 143 (concluding "a partially disabled claimant bears the burden of establishing a causal link between a claimed economic loss and the work-related injury”).